**In the Matter of W. Clark STUMP, Respondent.**

No. 4998.

Supreme Court of Alaska.

Dec. 5, 1980.

Charles L. Cloudy, Ziegler, Cloudy, Smith, King & Brown, Ketchikan, for respondent.

William W. Garrison, Bar Counsel, Anchorage, for the Alaska Bar Assn.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and BUCK-ALEW, Superior Court Judge.

OPINION

RABINOWITZ, Chief Justice.

The issue before us concerns determination of the appropriate disciplinary sanction to be imposed against W. Clark Stump.[1]

In proceedings before the Area Hearing Committee and the Disciplinary Board of the Alaska Bar Association, respondent W. Clark Stump admitted to all of the alleged acts of professional misconduct with which he was charged. More particularly, Stump admitted to violating the following provisions of Disciplinary Rule 1–102 of the Code of Professional Responsibility:

(A) A lawyer shall not:

. . . . .

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice.[2]

The uncontested facts clearly reveal that W. Clark Stump violated each of these sub-

---

1. The range of disciplinary sanctions available to this court is found in Alaska Bar R. II–12, which provides:

   Misconduct shall be grounds for:
   (a) Disbarment by the Court; or
   (b) Suspension by the Court for a period not exceeding five years; or
   (c) Public censure by the Court; or
   (d) Private reprimand by the Disciplinary Board; or
   (e) Private informal admonition by the Administrator.

2. Alaska Bar R. II–9 provides, in part:

   The license to practice law in Alaska is, among other things, a continuing proclamation by the Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and counselor, and as an officer of the courts. It is the duty of every member of the bar of this State to act at all times in conformity with standards imposed upon members of the Bar as conditions for the privilege to practice law. These standards include, but are not limited to, the code of professional responsibility, and the code of judicial conduct, that have been, and any that may be from time to time hereafter, adopted or recognized by the Supreme Court of Alaska.

   . . . . .

   Any attorney admitted to practice law in Alaska or any other attorney who appears, participates, or otherwise engages in the practice of law in this State is subject to the supervision of the Supreme Court of Alaska ... and the Disciplinary Board hereinafter established.

divisions of Disciplinary Rule 1–102.[3] More particularly, the record shows that Stump falsified an item of documentary evidence for use on his own behalf in civil litigation pending before the superior court in which he was named as a party defendant. Thereafter, in the course of that litigation, W. Clark Stump, while under oath, on three separate occasions falsely affirmed the authenticity of the document he had fabricated.

The Area Hearing Committee unanimously recommended that respondent W. Clark Stump be suspended from the practice of law in the State of Alaska for a period of one (1) year.[4] The Disciplinary Board of the Alaska Bar Association in turn unanimously recommended that W. Clark Stump be suspended from the practice of law for a period of five years commencing from the date of its recommendation (October 31, 1979).[5] The basis for the Disciplinary Board's recommendation is articulated in the following findings of fact which were formulated by the Disciplinary Board.

12. The falsification of evidence is one of the most serious acts of misconduct that an attorney can commit because it is an attack on the integrity of the adversary system which depends on full and truthful disclosure of facts to the decision maker.

13. When false evidence is presented not only the judicial system but also the legal profession, the client and the public suffer harm to varying degrees.

14. While respondent apparently believed he did not represent the client and while he was presumably under stress because of his involvement in a hotly contested custody action, nevertheless it is at just such times that the exercise of good judgment on the part of a lawyer is most critical.

15. While the Disciplinary Board recognizes that attorneys are capable of judgmental error, in this case the preparation of the false document while under stress, the later false swearing as to its authenticity is inexcusable.

16. Nevertheless, because Respondent has reimbursed the expenses to the client and has demonstrated deep remorse, the ultimate sanction mandated by the type of conduct herein demonstrated, namely disbarment, should not in this case be exacted.

17. By reason of the foregoing, the Disciplinary Board unanimously finds that the recommendation of the Hearing Committee is inadequate . . . .

Before this court, respondent has argued that there are two issues to be decided: first, whether the Disciplinary Board was justified in finding the Area Hearing Committee's recommendation inadequate, and second, whether the recommendation of the Disciplinary Board was "appropriately reflective of the character of the offenses and the attendant circumstances surrounding the offenses admitted by Stump." As indicated at the outset, each of these issues is subsumed under the more general question of the determination of the appropriate sanction to be imposed.

In arguing against adoption of the Disciplinary Board's recommendation, and in turn urging the imposition of less than five years' suspension, respondent contends that the Disciplinary Board failed to properly apply the following principle of the Code of Professional Responsibility:

The severity of judgment against one found guilty of violating a Disciplinary

---

3. The relevant facts appear in full in the "Southeastern Grievance Committee Conclusions and Recommendations" which are found in Appendix "A" to this opinion.

4. The Area Hearing Committee articulated two goals in making its recommendation, namely:
1. To protect the public and promote faith and confidence in our profession by strict adherence to our ethical canons, and
2. To tailor a penalty in a fashion which upholds those standards while recognizing the ability of an individual attorney to reform and make worthwhile contributions to our society and our profession after admitted transgressions.

5. At oral argument Bar Counsel recommended that respondent be disbarred from the practice of law in Alaska.

Rule should be determined by the character of the offense and the attendant circumstances.[6]

In regard to his contention that the Board failed to properly weigh the attendant circumstances, respondent advances numerous mitigating factors. Respondent argues that the underlying civil litigation (the *Lewis* litigation) which led to this disciplinary proceeding was not instituted until four years after he had allegedly engaged in a conspiracy against Lewis; that at the time service of the *Lewis* complaint was effected upon him, respondent was engaged as counsel in a bitter and hotly contested custody dispute; that at that time respondent was emotionally disturbed over his wife's health and the demands of his law practice which were magnified by the retirement of his father, who was respondent's law partner; that respondent, on his own motion, notified Bar Counsel of his violations of the Disciplinary Rules; that the superior court ordered respondent to pay $25,000 to Lewis as costs relating to the former's falsifications in the *Lewis* litigation, which sum has been paid by respondent; that respondent has been indicted for violation of AS 11.30.290 (offering false evidence) and does not intend to contest this criminal charge; [7] and that respondent was admitted to the Alaska Bar in 1968 and has had no prior or subsequent record of misconduct.

Concerning the character of the offenses committed by Stump, it is argued that it is of some significance that these acts were carried out by respondent in his private capacity as a private party litigant, rather than in his capacity as a lawyer representing a client. Further, it is argued that the facts disclose that the content of the fabricated document "was essentially and substantially true, and that the falsification was limited to the dated existence of the Note-o-Gram and of its mailing by Stump to Lewis." [8].

Bar Counsel counters, in part, by arguing that the fact that respondent's misconduct was committed in his private capacity rather than in his capacity as an attorney is "of little merit" because "[i]n point of fact, Respondent was attempting to establish through the falsely dated Note-o-gram and the subsequent corroborating acts, that he had acted competently as an attorney." Concerning respondent's truthfulness argument, Bar Counsel points out that this overlooks the fact that, regardless of the truthfulness of the information contained in the document, the Note-o-gram was prepared to indicate that it was sent on a date when it was not. Bar Counsel further argues: "The Note-o-gram itself was a lie; a falsification prepared for the purpose of conclusively establishing a defense to an allegation contained in plaintiff's complaint." [9]

Regarding the attendant mitigating circumstances, Bar Counsel's position is that the Disciplinary Board did consider them in fashioning its suspension recommendation, and that respondent's claimed elements of emotional stress flowed from his initial misconduct and were subsequently exacerbated by respondent's continued misconduct.

In reaching a decision as to an appropriate disciplinary sanction in this case, we have considered the underlying violations of the Disciplinary Rules involved and the relevant surrounding circumstances.[10] The

---

**6.** Preliminary Statement, Code of Professional Responsibility. *See also* § 7.1 ABA Standards for Lawyer Discipline and Disability Proceedings (Approved Draft 1979).

**7.** At the time of oral argument, this court was advised that sentencing had not taken place in the criminal case.

**8.** In this regard, it is further argued that Stump's falsification had only a cumulative, rather than a material, relationship to the issues involved in the *Lewis* suit.

**9.** Bar Counsel notes that respondent "felt it was necessary to maintain the dissimulation by continued false statements over a period of approximately two and one-half years."

**10.** The discipline to be imposed should depend upon the specific facts and circumstances of the case, should be fashioned in light of the purpose of lawyer discipline, and may take into account aggravating or mitigating circumstances.
ABA Standards for Lawyer Discipline and Disability Proceedings § 7–1 (Approved Draft 1979).

facts alluded to previously [11] convincingly demonstrate that W. Clark Stump is guilty of serious violations of provisions of the Disciplinary Rules, which violations directly reflect upon his professional ability and competency to serve clients. Further, such conduct on the part of respondent reflects adversely on the legal profession, calls into question the public trust accorded respondent as an officer of the court, and is prejudicial to the administration of justice in the state of Alaska.

Thus, based upon our consideration of the facts pertaining to Stump's misconduct and all of the relevant surrounding mitigating circumstances, we have concluded that respondent's conduct warrants imposition of a disciplinary sanction. Concerning the appropriate sanction, we have given serious consideration to the recommendations of the Area Hearing Committee and the Disciplinary Board of the Alaska Bar Association and have determined that protection of the interests of society and the legal profession are best served by adoption of the recommendation of the Disciplinary Board.

It is therefore ordered that Stump's license to engage in the practice of law in Alaska shall be suspended for five years commencing from October 31, 1979.

BOOCHEVER, J., not participating.

APPENDIX ·

DISCIPLINARY BOARD

ALASKA BAR ASSOCIATION

AREA I

| | | |
|---|---|---|
| In the Disciplinary Matter Involving | ) ) ) | |
| W. CLARK STUMP, | ) ) | No. 78–20 |
| Respondent-Attorney. | ) ) ) ) | |

11. See appendix "A" in particular.

SOUTHEASTERN GRIEVANCE COMMITTEE CONCLUSIONS AND RECOMMENDATIONS

This matter was heard before the Area I, First Judicial District Disciplinary Hearing Committee on June 12, 1979, pursuant to a petition for formal hearing filed by Bar counsel, against the Respondent W. Clark Stump.

The Hearing Committee was composed of Gordon Evans (attorney member and chairman), Merle Bottge (lay member), and William Royce (attorney member).

The Petitioner was represented by William W. Garrison. The Respondent was present and represented by Charles L. Cloudy.

The Hearing Committee reviewed the pleadings and exhibits and heard the testimony of W. Clark Stump, together with the comments of counsel for Petitioner and Respondent. Upon such review of the entire written record and analysis of the testimony, the Hearing Committee makes the following Findings of Fact and Proposed Order:

FINDINGS OF FACT

1. This Hearing Committee has jurisdiction to make these Findings of Fact and Proposed Order.

2. W. Clark Stump, Respondent, is now and was at all times mentioned herein, an attorney, subject to the disciplinary rules in effect in this State. Mr. Stump was duly admitted by the Supreme Court of the State of Alaska on November 15, 1968. (Transcript, page 11, line 21) He has continuously engaged in the private practice of law since that date in a firm having its office and place of business in Ketchikan, First Judicial District, State of Alaska. (Transcript, page 11, line 21–25)

3. Mr. Stump's firm was originally composed of his father, Wilford C. Stump, and his uncle, Earnest Bailey, together with Respondent. This firm during the times relevant hereto changed with the retirement of Mr. Bailey in 1969, and the retirement of

Wilford Stump in 1975. (Transcript, page 11, lines 23–24; page 13, lines 10–11)

4. On November 28, 1975, Civil Action No. 75–758 was filed in Superior Court in Ketchikan. (Exhibit 1) Said complaint, as it related to W. Clark Stump, alleged:

a) That prior to entering into a contract on December 3, 1971, for the purchase of the stock of Marine View Apartment Building, purchaser (the plaintiff) retained and employed defendant W. Clark Stump as his attorney (Exhibit 1, paragraph V).

b) That defendant W. Clark Stump was negligent in the performance of his duties for plaintiff in not opening an escrow account (Exhibit 1, paragraph VIII), not attending to the proration of taxes (Exhibit 1, paragraph X), not dissolving the corporation in a timely fashion (Exhibit 1, paragraph XI), and in not rendering tax advice (Exhibit 1, paragraph XII).

c) That W. Clark Stump participated in a civil conspiracy in concert with the Sellers and the escrow holder. The alleged object of this conspiracy was to deprive the plaintiff of certain tax advantages and thus:

"... render defendant unable to meet his financial obligations as set forth in the Stock Purchase Agreement between the parties, thereby enabling defendant Moran and the other Sellers to declare plaintiff in default and thereby retain the stock and ownership of the corporation and the Marine View Apartment Building, as well as all payments made by plaintiff prior to said default." (Exhibit 1, paragraph XXVII)

d) Plaintiff demanded judgment against Respondent in excess of Seventy-five Thousand ($75,000.00) Dollars as damages related to increased tax liabilities, plus One Hundred Thousand ($100,000.00) Dollars for mental anguish and hardship occasioned by the alleged conspiracy (Exhibit 1, paragraph XXVIII).

5. Said complaint was served upon Respondent during a recess in a bitterly contested custody trial; Respondent had received no earlier communication from plaintiff regarding the alleged conspiracy and negligence (Transcript, pages 13, 14 and 20). After notifying his insurance carrier of the suit, Respondent in early 1976 manufactured a Note-o-Gram (Exhibit A to the petition) which bore an October 15, 1971, date and which recited that plaintiff was not represented by Respondent, W. Clark Stump (Transcript, page 15, lines 1–7). Said Note-o-Gram was given to Respondent's counsel and was produced together with other documents to plaintiff in the course of discovery.

6. On July 14, 1976, W. Clark Stump at his deposition testified under oath that said Note-o-Gram was typed and sent by Respondent to plaintiff on or about October 15, 1971. In fact and truth, said Note-o-Gram was not typed until 1976, after the above described litigation had commenced. Count I of the petition alleges, the Respondent admits, and your Hearing Committee finds that such conduct by Respondent is in violation of Disciplinary Rule 1–102(A)(4).

7. On or about May 12, 1978, Respondent W. Clark Stump signed an affidavit which was filed in the Superior Court in the above described Civil Action, 78–758, in which Respondent states that said Note-o-Gram was sent on or about October 15, 1971. Count II of the petition alleges, the Respondent admits, and your Hearing Committee finds that such conduct by Respondent is in violation of Disciplinary Rule 1–102(A)(5).

8. On or about June 26, 1978, at a subsequent deposition, Respondent W. Clark Stump, testified under oath that said Note-o-Gram was typed and sent to plaintiff on or about October 15, 1971. Count III of the petition alleges, the Respondent admits, and your Hearing Committee finds that such conduct by Respondent is in violation of Disciplinary Rule 1–102(A)(4).

9. The petition alleges in Count IV, that the conduct of Respondent in Counts I, II and III in the aggregate constitutes a violation of Disciplinary Rule 1–102(A)(3). Respondent admits this allegation and your Hearing Committee so finds.

10. At the hearing, Mr. Garrison moved to amend the petition by striking the word "principal" in paragraph IV of said petition. This motion was unopposed and granted by the Hearing Committee chairman. Thereafter Respondent admitted the modified petition in its entirety. The facts as set out in said petition are conclusively established.

11. At the conclusion of the June 26, 1978, deposition, Respondent W. Clark Stump contacted Charles L. Cloudy and requested that Mr. Cloudy place the facts before the Alaska Bar Association so that the Bar could take appropriate action (Transcript, page 15, lines 18–22). Mr. Cloudy compiled all relevant records, and at Mr. Stump's request contacted Bar counsel William Garrison, which contact resulted in the institution of these proceedings. (Exhibit A, affidavit of C. L. Cloudy, page 2)

12. Mr. Stump is remorseful regarding his conduct and offers no excuses:

"I am sorry for what I've done, I am sorry for the shame that I have brought upon my profession and significantly for the shame that I have brought upon my family, my friends, and those who had confidence in me . . . I made a costly mistake and I am ready to pay the penalty for it." (Transcript, page 16, lines 24 through page 17, line 6). (See also Transcript, page 23, line 10 through page 24, line 2)

Mr. Stump has been indicted and is presently facing charges of passing a forged document, which charges he indicates he will not contest. (Transcript, page 16, lines 21–24)

13. Respondent was required by Superior Court Judge Thomas Schulz to pay the sum of Twenty-two Thousand Five Hundred Eighty-two and 43/100ths ($22,582.43) as plaintiff's costs in developing the disclosure of the facts relating to the Note-o-Gram. (Exhibit D) This sum was increased to Twenty-five Thousand ($25,000.00) Dollars at the time of settlement of the litigation (Exhibit D). This amount has been paid (Transcript, page 16, lines 11–16). Restitution has been held relevant to the nature and extent of discipline; see *In re MacKay*, 416 P.2d 823 (Alaska, 1965).

14. The Note-o-Gram is viewed by your Hearing Committee as one transaction having component parts. The initial misconduct and fabricated Note-o-Gram was motivated by Respondent's desire as a party defendant to document falsely that which he believed to be the fact: namely that he in fact was not representing plaintiff in the sales transaction. The deposition testimony of plaintiff (Exhibit F, page 32, lines 6–15) and the deposition testimony of William Moran (Exhibit E, page 37, lines 5–7) tend to support Respondent's contention that in fact he did not represent plaintiff. Said fact does not excuse Respondent's conduct but is relevant on the issue of mitigation (see *Mosesian vs. State Bar of California*, 8 Cal.3d 60, 103 Cal.Rptr. 915, 500 P.2d 1115).

15. The harm occasioned to date by the misconduct of Respondent has been chiefly born by Respondent himself. Mr. Stump was at the time of the original fabrication, under significant emotional and mental stress. (Transcript, page 13 and 14). This factor while not controlling, is considered relevant by your Hearing Committee (see *In re Jones*, 96 Cal.Rptr. 448, 487 P.2d 1016). Mr. Stump has apparently practiced responsibly with the exception of the misconduct giving rise to these proceedings. No evidence has been brought to the Bar or to your Hearing Committee of prior or subsequent misconduct.

16. W. Clark Stump makes no request for a particular kind or duration of discipline and indicated that the evidence offered by him was by way of mitigation, and in no fashion was intended to justify or excuse Respondent's misconduct.

### Proposed Order

Your Hearing Committee having examined the testimony and written record before it, has two (2) goals in mind in fashioning a Proposed Order:

1. To protect the public and promote faith and confidence in our profession by strict adherence to our ethical canons, and

2. To tailor a penalty in a fashion which upholds those standards while recognizing

the ability of an individual attorney to reform and make worthwhile contributions to our society and our profession after admitted transgressions.

The unanimous recommendation of your Hearing Committee is that Respondent W. Clark Stump be suspended from the practice of law in the State of Alaska for a period of one (1) year.

/s/ Gordon Evans Chairman

/s/ Merle Bottge

/s/ William G. Royce

CONNOR, Justice, dissenting in part.

In disciplining attorneys it is possible, in demonstrating the zeal with which misconduct is condemned, to err on the side of undue severity.

In the case before us it should be kept in mind that punishments in addition to suspension from the practice of law have been and will be visited upon respondent. Among other things, he will be found guilty of a criminal offense. He has already made civil reparation by paying $25,000 to the person wronged by his misconduct. Additionally it must be recognized that suspending a lawyer from the practice of law stigmatizes him in the community. Even if he regains the privilege of practicing law, it may take many years before his misdeeds are expiated in the eyes of the community. In this sense the mere act of suspending an attorney, for any length of time, can amount to a substantial punishment. It is well known that after a long period of suspension the likelihood of an attorney re-entering the practice of law is greatly diminished.

In the case at bar I am impressed by the recommendation of the Area Hearing Committee that respondent should be suspended for a period of one year. As that committee concluded, such a suspension amounts to a substantial punishment, and demonstrates that the ethical standards of the profession will be enforced. But such a period of suspension also holds out hope for rehabilitation of an erring attorney so that someday, when the period of suspension is served, he can take steps to re-enter the profession and make worthy contributions to the wellbeing of the community, and the legal profession as well. It is conceivable that after this chastening experience respondent may, if he re-enters the profession, adhere to ethical standards of a very high order. I fear, however, that an unduly long suspension can have such a demoralizing effect that any chance of rehabilitation may be lost.

Therefore, I agree with the recommendation of the Area Hearing Committee, and would impose a one-year suspension upon respondent.

BURKE, Justice, dissenting in part.

I respectfully dissent.

"Repeatedly it has been said that, by admitting an attorney to practice, a court endorses him to the public as worthy of their confidence in professional matters." *Matter of Goldman*, 588 P.2d 964, 983 (Montana 1978) (Harrison, J., dissenting). Thus,

The license to practice law in Alaska is, among other things, a continuing proclamation by the Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and counselor, and as an officer of the courts.

Rule 9, Alaska Bar Rules. "[I]f he becomes unworthy, it is the *duty* of the court to withdraw the endorsement." 588 P.2d at 983 (emphasis in original).

To be admitted to the practice of law in this state, one must demonstrate that he is "of good moral character." Rule 2, § 1(d), Alaska Bar Rules. If Mr. Stump were applying for admission to the bar at this time, his admitted falsification of documentary evidence and acts of perjury would undoubtedly cause this court to reject his application out of hand, on the ground that he lacks that essential quality. I know of no instance, at least, where a person known to be guilty of such conduct has been admitted to practice by this court, nor can I imagine such a case.

Once admitted, the requirement of good character does not cease. It continues to be one of the requisites of bar membership. As one court has described this requirement,

No matter how learned in the law a man may be, nor how skillful he might be in the conduct of suits at law, or equity, he can never be admitted to the bar until he can satisfy the court that he possesses that first requisite for admission to the bar, *a good moral character.* Such character he must have when he knocks at the door of the profession for admission, and such character he must have while enjoying the privilege and right to remain within the fold. When he ceases to be a man of good repute, he forfeits his right to continue as a member of the bar.

588 P.2d at 985, *quoting Ex Parte Thompson*, 152 So. 229, 238 (Alabama 1933) (emphasis in original).

The purpose of this proceeding is not to punish Mr. Stump. It is to protect "the public, the courts and the legal profession itself." *Matter of Preston*, 616 P.2d 1, 6 (Alaska, 1980), *quoting In Re Kreamer*, 14 Cal.3d 524, 121 Cal.Rptr. 600, 535 P.2d 728, 733 (Cal.1975). As stated by Justice Harrison of the Supreme Court of Montana, "Unless we keep clean our own house ... we cannot expect the public to have confidence in the integrity of the bar and in our system of justice." 588 P.2d at 985.

For these reasons, I would order Mr. Stump disbarred.[1]

---

**1.** My decision that Mr. Stump should be disbarred is reached with great reluctance. He is a young man who has apparently practiced law in his community without incident for a number of years. Disbarment would no doubt have a devastating effect on his future, and serious consequences for his friends and the members of his family. Nevertheless, our duty, as I perceive it, does not permit us to do otherwise.