In the Disciplinary Matter Involving
Robert J. **BUCKALEW**, Respondent.

No. S–1077.

Supreme Court of Alaska.

Dec. 30, 1986.

Rehearing Granted in Part and Opinion
Amended Feb. 27, 1987.

Jeffrey M. Feldman and Marcia Vandercook, Gilmore & Feldman, Anchorage, for respondent.

Stephen J. Van Goor, Alaska Bar Ass'n, Anchorage, for Alaska Bar Assn.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

BURKE, Justice.

Robert J. Buckalew, the respondent in this proceeding, and the Alaska Bar Association's Discipline Counsel (Discipline Counsel) entered into a stipulation for discipline by consent. The Bar's Board of Governors, sitting as its Disciplinary Board (Board), accepted the stipulation and recommended that this court adopt it. Were we to do so, Buckalew would be suspended from the practice of law for five years. We now reject the Board's recommendation.

## I. FACTS AND PROCEEDINGS BELOW

In 1983, Buckalew represented Whittier Fuel and Marine Corporation in a damage action against the City of Whittier. In March of that year, the City moved for summary judgment. Buckalew failed to oppose the city's motion and on May 4 the motion was granted. On May 23, 1983, Buckalew learned of the court's action and filed a motion to stay entry of a final judgment. Later, on June 29, 1983, he filed a cross-motion for summary judgment and a supporting brief on behalf of Whittier Fuel. Despite these efforts, the superior court, on June 30, entered final judgment for the City.

Buckalew did not inform Whittier Fuel of the judgment dismissing its action. Instead, he told his client that the City had offered to settle the case for $250,000, with an initial payment of $50,000 by August 18, 1984, and monthly payments of $5,000 thereafter. Whittier Fuel accepted this fictional "offer." Buckalew then fabricated a false settlement document, forging the signatures of another attorney and a superior court judge, and sent the sham "agreement" to Whittier Fuel.

Between August 20, 1984, and June 17, 1985, Buckalew made "settlement payments" of approximately $95,000. Whittier Fuel received $70,000; the other $25,000 went to Buckalew's law firm, which was representing Whittier Fuel on a contingent fee basis. To make these "payments," Buckalew embezzled a total of $67,000 from two segregated trust accounts. These accounts had been established in cases in which he represented a bankruptcy trustee. Buckalew also used approximately $28,000 of his own money.

Buckalew's scheme appeared to be successful until his law partner discovered discrepancies in the firm's trust account records. The partner inquired about these discrepancies and Buckalew confessed to him what he had done. After discussions with counsel, Buckalew decided to report his misconduct. Buckalew's attorney then made a full disclosure of his client's deeds to the Alaska Bar Association, state and federal law enforcement authorities,[1] the bankruptcy court, and each of Buckalew's clients whose interests were affected.[2]

On July 18, 1985, we ordered interim suspension of Buckalew pursuant to Bar Rule 26(d).[3] On August 29, 1985, following a hearing before the Board of Governors of the Alaska Bar Association, Buckalew and

---

1. Buckalew later pled guilty in federal court to the felony of embezzlement of property by a trustee in violation of 18 U.S.C. § 153. The United States District Court imposed a five-year suspended sentence. Buckalew was placed on probation conditioned on his seeking mental health counseling and completing any remaining restitution. He was also ordered to pay a "special assessment" of $50. Buckalew was not prosecuted by the State of Alaska.

2. Following disclosure, Buckalew's law firm made full restitution to the trust accounts from which Buckalew had embezzled funds. Buckalew has also fully cooperated with investigations conducted by the Alaska Bar Association and law enforcement authorities.

3. Alaska Bar Rule 26(d) provides:
   Interim suspension will be imposed by the Court on a showing by Discipline Counsel of

Discipline Counsel entered into a stipulation for discipline by consent pursuant to Bar Rule 22(h).[4] The stipulation provided that Buckalew's conduct violated the attorneys' Code of Professional Responsibility DR 9-102 (requiring an attorney to preserve the identity of client's funds), DR 1-102(A)(3) (prohibiting an attorney from engaging in illegal conduct involving moral turpitude), DR 1-102(A)(4) (prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit or misrepresentation), and DR 1-102(A)(6) (prohibiting an attorney from engaging in any other conduct that adversely reflects on his fitness to practice law). The stipulation further provided that Buckalew should be suspended from the practice of law for a period of five years, with reinstatement conditioned upon Buckalew's compliance with

the requirements of Alaska Bar Rule 29(b).[5] The stipulation, after being approved by the Board, was filed with this court.

After reviewing the stipulation, we entered an order, *sua sponte*, requiring Buckalew to show cause why he should not be disbarred rather than suspended. Both Buckalew and Discipline Counsel filed briefs urging that because of the "mitigating factors"[6] present in this case we should accept the stipulation and not order Buckalew disbarred. Discipline Counsel additionally urged that in the event we decline to accept the stipulation, the matter be referred to a Hearing Committee in accordance with Bar Rule 22(h)(2).

---

conduct by an attorney that constitutes a substantial threat of irreparable harm to his or her clients or prospective clients or where there is a showing that the attorney's conduct is causing great harm to the public by a continuing course of misconduct.

**4.** Alaska Bar Rule 22(h) provides:

Respondent may tender a conditional consent to a specific discipline contained in Rule 16. This conditional consent will be submitted to Discipline Counsel for his or her approval. If accepted by Discipline Counsel, (s)he will refer the conditional admission to the Board for its approval or rejection of the requested discipline.

The consenting Respondent will present to the Board an affidavit stating that (s)he desires to consent to the specific discipline and that

(1) his or her consent is freely and voluntarily given and is not the subject of any coercion or duress; and

(2) (s)he admits to the charges stated in the grievance.

Acceptance of the conditional consent by the Board will be subject to Court approval if the specific discipline to be imposed includes discipline provided in Rule 16(a)(1), (2), (3) and (4). Any conditional admission rejected by the Board or the Court will be withdrawn and Discipline Counsel will proceed under Section (e) of this Rule. Any admission made by Respondent in a conditional consent rejected by the Board or the Court cannot be used against the Respondent in any subsequent proceeding.

If the Court or the Board rejects a conditional consent, the matter will be remanded to

the Hearing Committee, if any, which was appointed to hear the petition. If no Hearing Committee has been appointed, the Director will appoint one in accordance with Section (f) of this Rule.

**5.** At the time of the stipulation, an attorney who had been suspended for more than six months was entitled to automatic reinstatement upon the filing of a verified petition, unless a motion to deny reinstatement was filed by discipline counsel. Former Alaska Bar Rule 29(c). A disbarred attorney, on the other hand, had to satisfy certain criteria before being readmitted to the practice of law. *See* Former Alaska Bar Rule 29(b)(1). Since that stipulation, Rule 29 has been amended so that the more onerous reinstatement requirements now apply to all attorneys who have been disbarred or suspended for more than one year. Alaska Bar Rule 29(c). Thus, the stipulation essentially mandated that Buckalew comply with what are now the requirements of current Rule 29.

**6.** The "mitigating factors" noted in the stipulation were that Buckalew (1) was afflicted with emotional problems during the period of his misconduct and has been diagnosed as suffering from chronic dysthymic disorder, recurrent major depression with melancholia, alcohol dependence (in remission), caffeine dependence and mixed personality disorder; (2) has no record of prior misconduct; (3) made full disclosure of his wrongdoing and his law firm has made full restitution; (4) has fully cooperated with the Bar Association and law enforcement authorities and recognizes the depth of his wrongdoing and is remorseful; (5) did not use any of the embezzled funds for personal use.

## II. SELECTION OF AN APPROPRIATE SANCTION

We must now determine whether to impose the recommended sanction.[7] Essentially, we must ascertain whether to suspend Buckalew for five years, as recommended by the Disciplinary Board, or whether this sanction is too lenient.[8]

### A. *The Appropriate Standards for Determining Sanctions*

In the past, we have determined the appropriate sanction for lawyer misconduct on a case-by-case basis, grounded upon a "balanced consideration of [all] relevant factors." *In re Minor*, 658 P.2d 781, 784 (Alaska 1983) (quoting *Spindell v. State Bar of California*, 13 Cal.3d 253, 118 Cal. Rptr. 480, 486, 530 P.2d 168, 174 (Cal.

1975)).[9] We followed this approach because no comprehensive standards or guidelines existed to help us determine appropriate sanctions. *Id.* Today, however, such guidelines are provided by the American Bar Association's recently adopted Standards for Imposing Lawyer Sanctions (ABA Standards).[10]

The ABA Standards set forth a comprehensive system for determining the proper sanction for lawyer misconduct. They are designed to promote:

(1) consideration of all factors relevant to imposing the appropriate level of sanction in an individual case;[11]

(2) consideration of the appropriate weight of such factors in light of the stated goals of lawyer discipline;[12]

---

**7.** It is our duty to discipline lawyers who indulge in practices inconsistent with the high ethical standards imposed upon the legal profession in this state. *In re Preston*, 616 P.2d 1, 4–5 (Alaska 1980); *see also* Alaska Bar R. 9(a), (c) & 16(a). In determining the appropriate sanction to be imposed, we need not accept the Board's recommendation but may exercise our own independent judgment. *In re Minor*, 658 P.2d 781, 783 (Alaska 1983); *In re Simpson*, 645 P.2d 1223, 1228 (Alaska 1982); *Preston*, 616 P.2d at 6.

**8.** Disbarment in Alaska is not necessarily permanent. Alaska Bar Rule 29(b)(5) allows a lawyer who has been disbarred to apply for reinstatement five years from the effective date of the disbarment. Thus, whether Buckalew is suspended for five years or disbarred, the punitive effect may be the same.

**9.** In *Minor*, we stated without discussion, that the "relevant factors" to be considered are whether there are mitigating circumstances, what efforts, if any, the lawyer has made to remedy the problem, and the lawyer's prior disciplinary record. 658 P.2d at 784. We also noted that additional factors *may* include the seriousness and circumstances of the offense, avoidance of repetition, deterrent effect upon others, maintaining respect for the legal profession, and assurance that those who seek legal services will be insulated from unprofessional conduct. *Id.* We did not, however, determine whether all of these factors must be considered in every case or whether they are all entitled to equal weight.

In the past we have also cited, without comment, the ABA Standards for Lawyer Discipline and Disability Proceedings, § 7-1 (Approved Draft 1979). *See In re Stump*, 621 P.2d 263, 265 nn. 8 & 10 (Alaska 1980). This standard essentially provides for the same type of analysis employed in *Minor*. It does not provide comprehensive guidelines nor attempt to recom-

mend the type of discipline to be imposed in any particular case.

**10.** ABA Standards for Imposing Lawyer Sanctions (1986) *reprinted in* ABA/BNA Lawyer's Manual on Professional Conduct, 01:801— 01:851 (1986). These standards were adopted as official ABA policy in February 1986. They are the result of an exhaustive study done by the ABA Joint Committee on Professional Standards (Sanctions Committee). The Sanctions Committee examined all reported lawyer discipline cases from 1980 to June, 1984 and all the published cases in eight representative jurisdictions for the past decade. In each case data was collected concerning the type of offense, the sanction imposed, policy considerations identified, and any mitigating or aggravating circumstances noted. ABA Standards, Preface, ABA/BNA at 01:803.

**11.** ABA Standards, § 3.0 sets forth the factors to be considered by a court imposing sanctions. They are: "(a) the duty violated; (b) the lawyer's mental state; and (c) the actual or potential injury caused ... and (d) the existence of aggravating or mitigating factors." ABA Standards, at § 3.0, ABA/BNA at 01:816.

**12.** The Sanctions Committee found five basic purposes of lawyer discipline that the courts have consistently identified. They are in order of importance:

1. to protect the public;
2. to insure the administration of justice;
3. to protect the integrity of the legal system;
4. to deter further unethical conduct; and
5. to educate other lawyers and the public thereby deterring unethical behavior among all members of the profession.

ABA Standards, § 1.1, commentary, ABA/BNA at 01:807–08 (footnotes omitted).

(3) consistence in the imposition of disciplinary sanctions for the same or similar offenses within and among jurisdictions.[13]

ABA Standards, § 1.3, ABA/BNA at 01:809–10. They also provide a theoretical framework within which to organize and analyze the relevant factors to be considered in discipline sanction cases. Under this four-pronged test, sanctioning courts should ask the following questions:

(1) What ethical duty did the lawyer violate? (A duty to a client, the public, the legal system, or the profession?)

(2) What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?)

(3) What was the extent of the actual or potential injury caused by the lawyer's misconduct? (Was there a serious or potentially serious injury?)

(4) Are there any aggravating or mitigating circumstances?

ABA Standards, Theoretical Framework, ABA/BNA at 01:805–06.

■ The ABA Standards and the methodology that they provide are sound. They combine clear, straight-forward guidelines which ensure a level of consistency necessary for fairness to the public and the legal system with the flexibility and creativity essential to secure justice to the disciplined lawyer. Therefore, we will refer to the ABA Standards and methodology as an appropriate model for determining sanctions for lawyer misconduct in this state. With

this in mind, we now turn to the stipulated facts of the case at bar.

### B. Application of the ABA Standards to Buckalew's Misconduct

■ Under the foregoing methodology, our task in this case is threefold. The initial step requires that we answer the first three "prongs" of the ABA test set forth above. Next, we must look to the ABA Standards to discern what sanction is recommended for the "type" of misconduct found in our initial inquiry. After determining the recommended sanction, we must ascertain whether any aggravating or mitigating circumstances exist which warrant increasing or decreasing the otherwise appropriate sanction. See, ABA Standards, Methodolgy, ABA/BNA at 01:803–04.

### 1. The Ethical Duties Violated, Buckalew's Mental State, and the Injury or Potential Injury

Because this case involves a stipulation for discipline by consent pursuant to Bar Rule 22(h),[14] the first three "prongs" of the ABA test have essentially been answered for us. Thus, extensive analysis is not required here.

Under the first prong (the ethical duties violated) Buckalew stipulated that his conduct violated four disciplinary rules—DR 9–102; DR 1–102(A)(3); DR 1–102(A)(4); and DR 1–102(A)(6). These disciplinary rules encompass ethical duties that Buckalew owed to his clients,[15] the public,[16] and the legal system.[17]

---

**13.** Inconsistency of sanctions was one of the major driving forces behind promulgation of the ABA Standards. As the Sanctions Committee noted:

> For lawyer discipline to be truly effective, sanctions must be based on clearly developed standards. Inappropriate sanctions can undermine the goals of lawyer discipline: sanctions which are too lenient fail to adequately deter misconduct and thus lower public confidence in the profession; sanctions which are too onerous may impair confidence in the system and deter lawyers from reporting ethical violations on the part of other lawyers. Inconsistent sanctions, either within a juris-

diction or among jurisdictions, cast doubt on the efficiency and the basic fairness of all disciplinary systems.

ABA Standards, Preface at 1–2, ABA/BNA at 01:801.

**14.** See supra note 4.

**15.** See ABA Standards, § 4.1 (Failure to Preserve Client's Property); § 4.6 (Lack of Candor), ABA/BNA at 01:817 & 01:827.

**16.** See, ABA Standards, § 5.1 (Failure to Maintain Personal Integrity), ABA/BNA at 01:829.

**17.** See, ABA Standards, § 6.2 (Abuse of Legal Process), ABA/BNA at 01:834.

The second prong (the lawyer's mental state) is also easy to discern. Buckalew's commission of the charged misconduct was both knowing [18] and intentional.[19] When he prepared the forged "settlement agreement," Buckalew acted with the conscious objective to deceive Whittier Fuel into believing its case had been settled. Moreover, Buckalew's conscious purpose in embezzling funds from his trust accounts was to implement his initial wrongdoing. A psychiatric report prepared by Dr. Deborah Geeseman in connection with Buckalew's federal prosecution clearly indicates that Buckalew was aware of the nature of his conduct and knew the possible consequences. Buckalew also pled guilty in federal court to a crime which included "knowledge" as part of its *mens rea.* *See* 18 U.S.C. § 153.

The answer to the third inquiry (the injury or potential injury caused) is likewise readily apparent. Buckalew's misconduct included defrauding a client by fabricating a "settlement agreement" and intentionally representing the same as genuine, abuse of the legal process by forging a judge's signature, and the embezzlement of client funds, in violation of state and federal law.

Such conduct was injurious not only to Buckalew's bankruptcy clients, but to Whittier Fuel, the public and the legal system as well. Moreover, the potential for such misconduct to cause even more serious injury was enormous.

In sum, the stipulated facts show that Buckalew intentionally and knowingly violated ethical duties to his clients, the public and the legal system, which caused injury and potential serious injury. Thus, we must ascertain the appropriate sanction for this type of misconduct.

### 2. *The Appropriate Sanction for Buckalew's Misconduct*

There are four applicable ABA Standards for the type of misconduct in which Buckalew engaged. All four standards recommend disbarment as the generally appropriate sanction.

Disbarment is the recommended sanction for Buckalew's knowing conversion of client funds.[20] The same is true for Buckalew's deceptive conduct.[21] Likewise, disbarment is recommended as the proper sanction for Buckalew's commission of criminal acts [22] and for his abuse of the legal process.[23]

---

**18.** The ABA Standards define "Intent" as: "the conscious objective or purpose to accomplish a particular result." ABA Standards, Definitions, ABA/BNA at 01:807. *Accord* AS 11.81.900(a)(1) (defining criminal intent as a conscious objective to cause a particular result).

**19.** The ABA Standards define "knowledge" as: "the conscious awareness of the nature or attendant circumstances of the conduct ... without a conscious objective ... to accomplish a particular result." ABA Standards, Definitions, ABA/BNA at 01:807. *Accord* AS 11.81.900(a)(2) (knowingly for criminal acts defined as an awareness that conduct is of a particular nature or that a particular circumstance exists).

**20.** ABA Standards § 4.11 states that, "Disbarment is generally appropriate when a lawyer knowingly converts property and causes injury or potential injury to a client." ABA/BNA at 01:817.

**21.** ABA Standards § 4.61 provides:
Disbarment is generally appropriate when a lawyer deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potential serious injury to a client.
ABA/BNA at 01:827. ABA Standards § 5.11 provides in part:
Disbarment is generally appropriate when:
 . . . .
(b) a lawyer engages in ... intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
ABA/BNA at 01:829.

**22.** ABA Standards § 5.11(a) states in pertinent part:
Disbarment is generally appropriate when:
(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice ... misrepresentation, fraud, ... misappropriation or theft....
ABA/BNA at 01:829.

**23.** See note 23 on page 54.

Thus, the ABA Standards recognize that misconduct of the nature and gravity of Buckalew's generally requires disbarment. We agree. Our analysis does not end here, however. Under those same standards, we must now inquire whether there are any mitigating circumstances which warrant a reduced sanction.[24]

### 3. *Mitigation*

ABA Standards § 9.32 sets forth the circumstances that a court may appropriately consider in mitigation. These factors include:

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical or mental disability or impairment;

(i) delay in disciplinary proceedings;

(j) interim rehabilitation;

(k) imposition of other penalties or sanctions;

(*l*) remorse;

(m) remoteness of prior offenses.

ABA/BNA at 01:842.

Buckalew argues that the mitigating factors set forth in the stipulation[25] more than justify acceptance of the Board's recommendation of a five-year suspension. These factors include Buckalew's emotional and mental problems at the time of his misconduct, the absence of any prior record of misconduct, his full disclosure of his wrongdoing after being confronted, his full cooperation and remorse, and the fact that his law firm made full restitution. We cannot agree.

There is no "magic formula" to determine which or how many mitigating circumstances justify the reduction of an otherwise appropriate sanction. Each case presents different circumstances which must be weighed against the nature and gravity of the lawyer's misconduct. In this case we conclude that the mitigating factors present do not allow us to impose a reduced sanction. A number of reasons compel our conclusion.

First, although Buckalew's mental and emotional problems contributed to his professional misconduct, we cannot ignore the fact that our paramount duty, "lies in the assurance that the public will be protected in the performance of the high duties of ... attorney[s]. ... Our primary concern must be the fulfillment of proper professional standards, whatever the unfortunate cause, emotional or otherwise for the attorney's failure to do so." *In re Possino*, 689 P.2d 115, 120 (Cal.1984) (quoting *Grove v. State Bar*, 427 P.2d 164, 167 (Cal.1967)). Moreover, simply because Buckalew has no record of prior misconduct, this does not make disbarment inappropriate. The nature and gravity of a lawyer's misconduct can make disbarment

---

**23.** ABA Standards § 6.2 provides in pertinent part:

> Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another and causes serious injury or potentially serious injury to a party, or causes serious or potentially serious interference with a legal proceeding.
>
> ABA/BNA at 01:834.

**24.** Because disbarment is the most severe sanction we can impose, we need not consider any aggravating factors in order to determine whether Buckalew's sanction should be increased. However, the presence of any aggravating factors is relevant here because of the "neutralizing" effect they may have upon any mitigating factors. *See infra* note 31 & accompanying text.

**25.** *See supra* note 6.

proper even where the misconduct was an isolated event, and apparently quite out of character. *In re Giddens*, 635 P.2d 166, 169 (Cal.1981). Likewise, Buckalew's claim of "voluntary disclosure" carries little weight. Buckalew turned himself in only *after* his misconduct was discovered by his law partner. While cooperation and disclosure are to be strongly encouraged, not every act of that sort deserves full mitigative effect. Finally, the persuasiveness of the other mitigating circumstances on which Buckalew relies tend to be neutralized by the presence of several aggravating factors.[26]

Second, the severity of Buckalew's misconduct cannot be overstated. "[T]here are few more egregious acts of professional misconduct ... than the misappropriation of client's funds held in trust." *In re Beckman*, 79 N.J. 792, 400 A.2d 792, 793 (N.J.1979). Moreover, a lawyer who engages in serious criminal conduct violates "one of the most basic professional obligations to the public, the pledge to maintain personal honesty and integrity." ABA Standards, § 5.11, commentary, ABA/BNA at 01:829. We cannot expect the public to voluntarily comply with the legal system if officers of the court are allowed to break the law and remain in positions of public trust. In other words, " '[u]nless we keep clean our own house ... we cannot expect the public to have confidence in ... our system of justice.' " *Stump*, 621 P.2d at 269 (Burke, J., dissenting in part) (quoting *In re Goldman*, 179 Mont. 526, 588 P.2d 964, 985 (1978) (Harrison, J., dissenting)).

A third important factor that weighs heavily in our decision is our duty to maintain the integrity of the bar. To be admitted to the practice of law in Alaska, an applicant must demonstrate that he or she is "of good moral character." Alaska Bar Rule 2(1)(d). If Buckalew were applying for admission to the bar at this time, his misconduct "would undoubtedly cause this court to reject his application out of hand, on the ground that he lacks that essential quality." *Stump*, 621 P.2d at 269 (Burke, J., dissenting in part). Once admitted, the requirement of good character does not cease to exist. In fact, it continues to be one of the most important requisites of bar membership in this state.[27] *Id.* at 270. There is no rational basis for distinguishing between the "moral character" required for admission to the bar and the "moral character" required to remain a practicing member. Society allows the legal profession the privilege of self-regulation. Thus, it is of the utmost importance that the public have confidence in the profession's ability to discipline itself—lest the privilege be withdrawn. In order to maintain public confidence, we must zealously protect against the perception that the legal profession has a "double-standard": one for those seeking admission and another for those already admitted.

Finally, whether Buckalew is disbarred or merely suspended for five-years pursuant to the Board's recommendation, the punitive effect may be the same. In either case Buckalew will be prohibited from engaging in the practice of law for five years and can only be readmitted if he complies with the requirements of Alaska Bar Rule

---

**26.** ABA Standards § 9.22 sets forth the factors which may be considered in aggravation. Buckalew's misconduct involved three of these factors; a pattern of misconduct, multiple offenses and vulnerability of victim. See ABA Standards § 9.22(c), (d), & (h), ABA/BNA at 01:841–42.

**27.** As one court has described this requirement: Good character has long been recognized as a requirement for the practice of law. No matter how learned in the law a man may be, nor how skillful he might be in the conduct of suits at law, or equity, he can never be admitted to the bar until he can satisfy the court that he possesses that first requisite to admission to the bar, *a good moral character*. Such character he must have when he knocks at the door of the profession for admission, and such character he must have while enjoying the privilege and right to remain within the fold. When he ceases to be a man of good repute, he forfeits his right to continue as a member of the bar.
*Ex Parte Thompson,* 152 So. 229, 238 (Ala.1933) (emphasis in original) (quoted in *Stump*, 621 P.2d at 270 (Burke, J., dissenting in part)).

29(c).[28] Buckalew argues, however, that suspension rather than disbarment is appropriate here because it would be less of a "stigma" on him.

Undoubtedly, "disbarment" has a more severe connotation than "suspension." And, if we were concerned only with the "effect" of the sanction on Buckalew, there would be much merit to his argument. However, the "effect" of disbarment on the disciplined lawyer is not the only, nor the most important, factor we must consider. Our paramount concern, here as always, must be the protection of the public, the courts, and the legal profession. *See, e.g., Preston,* 616 P.2d at 6. *See also,* ABA Standards § 1.1, ABA/BNA at 01:807–08.

## III. CONCLUSION

For the reasons stated above, we decline to impose the sanction consented to by Buckalew and recommended by the Disciplinary Board. As we are required to do under these circumstances, by Alaska Bar Rule 22(h), we remand this case to the Alaska Bar Association for further proceedings. Pending such further proceedings, Buckalew shall remain suspended from the practice of law in accordance with Alaska Bar Rule 26(d).

REMANDED.

**28.** *See supra* note 5 & accompanying text.

**1.** I concur in the majority's reference to the American Bar Association's Standards for Imposing Lawyer Sanctions as an appropriate model for determining sanctions for lawyer misconduct in Alaska. ABA Standard § 9.32 provides:

Factors which may be considered in mitigation.

Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical or mental disability or impairment;

RABINOWITZ, Chief Justice, with whom MOORE, Justice, joins, concurring in part and dissenting in part.

I dissent from the court's conclusion that the Board's recommended discipline must be rejected. In my view there are sufficient, significant mitigating factors to warrant acceptance of the Board's recommended sanction of a five-year suspension.[1]

During the period of his misconduct, Buckalew was suffering severe emotional and psychological problems. A psychiatric report prepared by Deborah Geeseman, M.D., in connection with the federal prosecution against Buckalew concluded that he was suffering from mental illness.[2] Dr. Geeseman stated that Buckalew "has been chronically depressed to some level over many years. At times, the depression has deepened to the point of becoming a major clinical depression, which has incapacitated his ability to function, both professionally and personally." Prior to the events in question, Buckalew had suffered periods of severe depression (beginning in 1979) and had attempted suicide, in April 1980. He had experienced marital difficulties for several years and was divorced in July 1982.[3]

Dr. Geeseman suggested that Buckalew's misconduct might be seen as a "professional suicide attempt," reflecting sub-

(i) delay in disciplinary proceedings;
(j) interim rehabilitation;
(k) imposition of other penalties or sanctions;
(*l*) remorse;
(m) remoteness of prior offenses.

**2.** Dr. Geeseman diagnosed Buckalew as suffering from the following under the American Psychiatric Association's Diagnostic and Statistical Manual—III: dysthymic disorder, chronic, severe; major depression, recurrent, with melancholia; alcohol dependence, in remission; caffeine dependence, continuous; mixed personality disorder.

**3.** Buckalew also had alcohol dependence problems, particularly during a severe one-year "binge" from July 1982 to June 1983. Buckalew entered alcohol rehabilitation treatment in June 1983. He completed a six-week treatment program and, although he was discharged from a follow-up program for nonattendance, he has not since experienced major problems with alcohol.

conscious anger at the high, unattainable expectations that he had experienced his entire life. Dr. Geeseman elaborated:

It is believed that there are probably very complex intrapersonal dynamics and interpersonal dynamics that may have affected his ongoing behavior, in a way that would ultimately force him out of his legal practice. In a distorted and covert way, this would then allow him to act out against the structure of expectations under which he has been living his life. On the one hand, this is giving [sic] the appearance that he is a very competent attorney, and able to do well. On the other hand, when the truth is found out, he has cut his own throat, figuratively speaking, to fight back against the pressures he is under, though he may not acknowledge feeling them, from himself, his family, and the community.

Admittedly, these problems do not excuse Buckalew's behavior; on the other hand, they do indicate motivations other than pure greed or evil intent on his part. *See* ABA Standards § 9.32(b), (c), (h).

Also of significance are the following factors: first, Buckalew was admitted to the Alaska bar in 1978 and had no record of professional misconduct prior to the events in issue. *See id.* § 9.32(a). Second, he fully disclosed his wrongdoing, and his law firm made restitution of the funds he embezzled shortly after discovering his conduct. *See id.* § 9.32(d), (e). Buckalew fully cooperated with law enforcement authorities, he recognizes the depth of his wrongdoing, and is remorseful. *See id.* § 9.32(e), (1). Finally, Buckalew has been sentenced by the United States District Court for the crime of embezzlement by a trustee, the same conduct that led to these proceedings.[4]

On the basis of the record before us, I am of the view that a five-year suspension will fully serve the purposes of lawyer discipline proceedings. Here a five-year suspension provides the public with the same protection as does disbarment, since a disbarred attorney may apply for reinstatement after five years. If at that point Buckalew wishes to be reinstated, he will have to demonstrate that he has the moral qualifications, competency, and knowledge of the law required to practice in this state, and that his resumption of the practice of law will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive of the public interest.[5]

I do not view a five-year suspension in this case as providing inadequate deterrence or as undermining confidence in the legal system. The sanction I would impose is a severe one; it has the same functional effect as disbarment. I recognize that "disbarment" has a more severe connotation than "suspension," and certainly Buckalew's conduct would generally deserve that stigma. The mitigating circumstances present here, however, warrant the imposition of a sanction that is short of the ultimate sanction of disbarment. I would therefore adopt the Board's recommendation that Robert J. Buckalew be suspended for a period of five years.

---

4. In this respect I would also note that Buckalew did not use any of the money for his personal consumption.

