*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| In the Disciplinary Matter Involving | ) | |
| | ) | Supreme Court No. S-15450 |
| DEBORAH IVY, Attorney. | ) | ABA File No. 2010D233 |
| | ) | |
| | ) | O P I N I O N |
| | ) | |
| | ) | No. 7106 – May 20, 2016 |

Appeal from the Alaska Bar Association Disciplinary Board.

Appearances: Charles E. Cole, Law Offices of Charles E. Cole, Fairbanks, for Deborah Ivy. Kevin G. Clarkson, Brena, Bell & Clarkson, P.C., Anchorage, for Alaska Bar Association.

Before: Fabe, Chief Justice, Winfree, Stowers, and Bolger, Justices. [Maassen, Justice, not participating.]

BOLGER, Justice.
FABE, Chief Justice, dissenting.

## I. INTRODUCTION

After remand the Alaska Bar Association Disciplinary Board again recommends disbarring an attorney who testified falsely in private civil litigation and in these disciplinary proceedings. Previously we directed the Board to reconsider sanctions in light of our holding that the attorney violated Alaska Rule of Professional Conduct 8.4 and Alaska Bar Rule 15, but not Rules of Professional Conduct 3.3 and 3.4, because the misconduct did not arise in a representative capacity. After independently reviewing the record, we now conclude that the severity of this misconduct warrants disbarment.

## II. FACTS AND PROCEEDINGS

We set out the facts and proceedings relevant to this bar matter in *In re Ivy*.[1] Here we recapitulate those facts most relevant to the imposition of sanctions.

Deborah Ivy and her brother, David Kyzer, were involved for several years in now-settled litigation over the dissolution and unwinding of business organizations and joint property holdings of Ivy, Kyzer, their two sisters, and others. During that litigation, relations between Kyzer and Ivy grew so acrimonious that a no-contact order was issued in December 2007. This order prohibited in-person or telephone contact between Ivy and Kyzer without an attorney present and prohibited each party from coming within 500 feet of the other's residence. Ivy subsequently testified that Kyzer made improper contact with her on three occasions after this order issued. In response Kyzer filed an ethics grievance with the Alaska Bar Association, claiming that Ivy fabricated these incidents, in violation of the Alaska Rules of Professional Conduct.

Two of the alleged incidents bear on the sanctions inquiry. First, on January 7, 2008, Ivy provided a 30-minute statement to a police officer, claiming that Kyzer had stalked her at a women's clothing store about ten days earlier. Based on Ivy's statement and because Ivy claimed to be in hiding and did not want to come to the courthouse, the officer offered to request a telephonic hearing for a domestic violence restraining order. The day Ivy made the police report was the same day she was scheduled to give a deposition in the litigation with Kyzer. A few days before, on January 3, the superior court had denied Ivy's motion to stay the deposition, and on January 4 we denied Ivy's emergency motion to stay the superior court order denying her request. Ivy did not appear at the January 7 deposition despite having been ordered to do so. In response to a follow-up order to appear for the deposition, Ivy's attorney

---

[1] 350 P.3d 758 (Alaska 2015).

reported the alleged stalking incident to the superior court. Ivy ultimately was deposed on March 13. At that deposition, Ivy testified about the alleged stalking incident. She described in great detail her movements among the various racks of clothing and the dressing rooms, Kyzer's allegedly menacing use of his vehicle, and her response. The second incident occurred in July 2010 when Ivy claimed that Kyzer assaulted her in a courtroom and that his actions constituted criminal sexual assault. To support this claim, Ivy filed a Notice of Sexual Assault with the court accompanied by an affidavit describing the alleged incident.

In December 2010 Kyzer filed an ethics grievance with the Alaska Bar Association, alleging that Ivy violated several Alaska Rules of Professional Conduct by falsely testifying that Kyzer stalked her and assaulted her in the courtroom. After an investigation by a special bar counsel and a hearing, the Area Hearing Committee found that Ivy knowingly provided false testimony at the deposition, in her affidavit, and during the disciplinary proceedings.

Specifically the Committee found that Ivy's testimony about the stalking incident was "not credible," that her description of how Kyzer moved his vehicle in the clothing store parking lot was "not physically possible," and that when confronted with this physical impossibility during cross-examination, Ivy "fabricated a new story," continued to testify falsely, and did not acknowledge that her account was flawed. The Committee also found that courtroom video accurately depicted the alleged assault and largely contradicted Ivy's claims. It further found it "not reasonably possible for someone to have experienced the inadvertent and minor bump of a brother attempting to be excused . . . and then to honestly or mistakenly believe that they had been sexually assaulted." The Committee also noted that Ivy testified that she had not been mistaken and that she had not imagined or hallucinated the alleged courtroom assault.

Based on clear and convincing evidence, the Committee concluded that Ivy violated Rules of Professional Conduct 3.3(a)(1) and (3); 3.4(b); 8.4(a), (b), and (c); and Bar Rule 15(a)(3). Applying this court's three-step attorney sanctions inquiry,[2] the Committee recommended disbarment given the ethical violations, Ivy's intentional mental state, the serious actual or potential injury caused by her misconduct, the recommended sanction under the American Bar Association Standards for Imposing Lawyer Sanctions,[3] and the balance of aggravating and mitigating factors. The Committee also recommended awarding $61,282.75 in attorney's fees and costs, about $26,000 less than bar counsel requested. The Board adopted the Committee's findings and recommendations in full. Ivy appealed.

In that initial appeal we agreed with the Board's findings about both the alleged stalking incident and the alleged courtroom assault.[4] We also agreed that sufficient circumstantial evidence established that Ivy's testimony was objectively false and that Ivy knew her testimony was not true.[5] Accordingly we concluded that Ivy violated Rule of Professional Conduct 8.4 and Bar Rule 15.[6] However because Ivy's misconduct arose in a purely personal capacity, we concluded that Ivy did not violate

---

[2]     *See In re Shea*, 273 P.3d 612, 622 (Alaska 2012).

[3]     STANDARDS FOR IMPOSING LAWYER SANCTIONS, AM. BAR ASS'N (1992) [hereinafter ABA STANDARDS], http://www.americanbar.org/content/dam/aba/ administrative/professional_responsibility/corrected_standards_sanctions_may2012_ wfootnotes.authcheckdam.pdf.

[4]     *In re Ivy*, 350 P.3d at 761-62.

[5]     *Id*. at 762.

[6]     *Id*. at 759.

Rules of Professional Conduct 3.3 and 3.4.[7] Therefore we remanded the matter to the Board to reconsider sanctions.[8] Finally we "f[ou]nd no fault" with the attorney's fees and costs award.[9] We indicated only that the Board "may revise the award if it determines that reconsideration . . . is warranted."[10]

Upon reconsideration, the Board again recommends disbarment and the same fee and cost award. Ivy again appeals.

## III. STANDARD OF REVIEW

We independently review the entire record in attorney disciplinary proceedings, but we give "great weight" to findings of fact made by the Board.[11] When an attorney appeals the Board's findings of fact, the attorney must demonstrate that such findings are erroneous.[12] When reviewing questions of law and questions concerning the appropriateness of sanctions, we apply our independent judgment.[13]

---

[7]  *Id*. at 762-65.

[8]  *Id*. at 766.

[9]  *Id.*

[10]  *Id.*

[11]  *In re Miles*, 339 P.3d 1009, 1018 (Alaska 2014) (quoting *In re Shea*, 273 P.3d 612, 619 (Alaska 2012)).

[12]  *Id*.

[13]  *Id*.

## IV.  DISCUSSION

### A.  Ivy's Misconduct Warrants Disbarment.

When sanctioning an attorney for misconduct, we seek to "ensure a level of consistency necessary for fairness to the public and the legal system."[14]  "Our paramount concern . . . must be the protection of the public, the courts, and the legal profession."[15]

The American Bar Association Standards for Imposing Lawyer Sanctions (ABA Standards) and our prior cases guide us.[16]  First we characterize the attorney's conduct in light of three variables:  the ethical violation(s), the attorney's mental state at the time of the misconduct, and the actual or potential injury the attorney's misconduct caused.[17]  This three-variable characterization yields a presumptive sanction under the ABA Standards, which we then adjust in light of aggravating and mitigating factors[18] and

---

[14]     *In re Buckalew*, 731 P.2d 48, 52 (Alaska 1986).

[15]     *Id*. at 56 (citing *In re Preston*, 616 P.2d 1, 6 (Alaska 1980); ABA STANDARDS, *supra* note 3, at § III.A.1.1).

[16]     *In re Shea*, 273 P.3d at 622.

[17]     *Id*. (citing *In re Cyrus*, 241 P.3d 890, 893 (Alaska 2010)).

[18]     *Id*. (citing *In re Cyrus*, 241 P.3d at 893).

our prior cases.[19] Throughout this inquiry we exercise our independent judgment,[20] and we recognize the fact-specific nature of each case.[21]

Ivy contends that her misconduct warrants a two-year suspension rather than the Board's recommended sanction of disbarment. Applying our independent judgment, we agree with the Board.

**1. Step one: ethical violation(s), mental state, and injury**

**a. Ethical violation(s)**

Previously we concluded that Ivy violated Bar Rule 15 and Rule of Professional Conduct 8.4.[22] Nonetheless the parties dispute which subsections of these rules Ivy violated, specifically whether Ivy violated Rule 8.4(b).[23] The nature of Ivy's

---

[19] *See In re Wiederholt*, 877 P.2d 765, 769 (Alaska 1994) ("[S]anctions in other cases can be no more than indicators of appropriate sanctions in a given case because of inevitable factual differences concerning not only the offense but the offender." (first citing *In re Buckalew*, 731 P.2d at 57 nn.10-11; then citing *In re Minor*, 658 P.2d 781, 784 (Alaska 1983))).

[20] *In re Shea*, 273 P.3d at 623 (citing *In re Cyrus*, 241 P.3d at 892-93).

[21] *In re Wiederholt*, 877 P.2d at 769 (first citing *In re Buckalew*, 731 P.2d at 57 nn.10-11; then citing *Minor*, 658 P.2d at 784).

[22] *In re Ivy*, 350 P.3d 758, 759 (Alaska 2015).

[23] As relevant here, Rule of Professional Conduct 8.4 provides:

It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(continued...)

violation, which determines the subsections of Rule 8.4 Ivy violated, bears on how we characterize Ivy's misconduct and accordingly affects our analysis of sanctions.

We conclude, as the Board did, that Ivy violated Rule 8.4(b) — as well as (a) and (c) — because her false testimony constitutes a criminal act that reflects poorly on her integrity as an attorney. Under Rule 8.4(b) it is professional misconduct for an attorney to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."[24] Ivy argues that the Board has no authority to conclude that she violated Rule 8.4(b) because she was never convicted of perjury.

Neither the text of Rule 8.4(b) nor the commentary to it requires an underlying criminal conviction. Rather, as *In re Friedman* demonstrates,[25] Rule 8.4(b) contemplates the criminal *nature* of an attorney's misconduct. In *In re Friedman* we concluded that an attorney violated former Disciplinary Rule 1–102(A)(3); that rule deemed it professional misconduct to "[e]ngage in illegal conduct involving moral turpitude."[26] We explained that, though the attorney had not been *convicted* of a crime, the attorney's misconduct *would have* constituted criminal misapplication of property under Alaska law if he had committed the underlying acts in Alaska rather than in

---

[23]     (...continued)
(c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

[24]     Alaska R. Prof. Conduct 8.4(b).

[25]     23 P.3d 620 (Alaska 2001).

[26]     *Id.* at 629 n.32 (alteration in original) (quoting former Disciplinary Rule 1–102(A)).

California.[27] But because the misconduct occurred elsewhere, it was beyond the reach of our penal laws.[28] Like former Disciplinary Rule 1–102(A)(3), Rule 8.4(b) does not require an underlying criminal conviction for a violation to occur. Violating the rule requires only that an attorney engage in dishonest conduct that *would be* criminal under Alaska law.[29]

Under AS 11.56.200 a person commits criminal perjury, a class B felony,[30] when "the person makes a false sworn statement which the person does not believe to be true."[31] The statement must be objectively false, and the person must know that the statement is false.[32] The statute encompasses all false sworn statements, not just those

---

[27]     *Id*. at 629 n.33.

[28]     *Id.*

[29]     *See* Alaska R. Prof. Conduct 8.4(b) ("It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects . . . ."); *In re Friedman*, 23 P.3d at 629 & nn.32-33.

[30]     AS 11.56.200(c).

[31]     AS 11.56.200(a).

[32]     *LaParle v. State*, 957 P.2d 330, 335 (Alaska App. 1998); Alaska Criminal Pattern Jury Instruction 11.56.200 (2009). Pattern Jury Instruction 11.56.200 provides:

> To prove that the defendant committed [the] crime [of perjury], the state must prove beyond a reasonable doubt each of the following elements:
>
> (1)  the defendant knowingly made a sworn statement;
>
> (2)  the statement was false; and
>
> (3)  the defendant did not believe the sworn statement to be true.

made in court.[33]  Under the Rules of Professional Conduct, the word "knowingly" "denotes actual knowledge of the fact in question."[34]

We already concluded that Ivy acted knowingly when she testified falsely, that Ivy's testimony was objectively false, that circumstantial evidence supported the finding that Ivy knew her testimony was untrue, and that Ivy "did not credibly explain that she mistakenly believed it was true."[35]  Such conclusions satisfy the elements of criminal perjury.  Because perjury is a dishonest act, we conclude that Ivy violated Rule 8.4(b).

We further conclude that Ivy violated Rules of Professional Conduct 8.4(a) and (c) and Bar Rule 15(a)(3).  Our previous decision supports these conclusions:  Ivy breached the Rules of Professional Conduct, which constitutes a violation of Rule of Professional Conduct 8.4(a); she engaged in dishonest conduct, which violates Rule of

---

[33]    AS 11.56.240(2) (defining "sworn statement"); *Joseph v. State*, 315 P.3d 678, 686 (Alaska App. 2013).  AS 11.56.240 broadly defines *statements* to include "representation[s] of fact[,] . . . opinion, belief, [and] other state[s] of mind" when the statement "clearly relates to state of mind apart from or in addition to any facts that are the subject of the representation."  AS 11.56.240(1).  *Sworn statements* include statements "knowingly given under oath . . . , including a notarized statement" and statements "knowingly given under penalty of perjury under AS 09.63.020."  AS 11.56.240(2).  AS 09.63.020 governs certified documents.

[34]    Alaska R. Prof. Conduct 9.1(h); *see also In re Ivy*, 350 P.3d 758, 762 (Alaska 2015) (explaining that " 'knowingly' making false statement for purposes of Rules [of Professional Conduct] requires both that statement be false and that speaker know so").

[35]    *In re Ivy*, 350 P.3d at 762.

Professional Conduct 8.4(c); and she knowingly misrepresented facts and circumstances in this grievance proceeding, which violates Bar Rule 15(a)(3).[36]

### b.     Mental state

The record supports the finding that Ivy acted intentionally when she testified falsely in the litigation with Kyzer and in these disciplinary proceedings. Neither the Rules of Professional Conduct nor the Bar Rules define "intentional" conduct.  The ABA Standards, which we follow, define "intent" as "the conscious objective or purpose to accomplish a particular result."[37]   Intent does not require malfeasance,[38] and circumstantial evidence can support a finding of intent.[39]

We previously concluded that Ivy acted, at minimum, knowingly when she testified falsely.[40]  We cited Ivy's motive to lie, the "incredibility of [her] testimony," the strong evidence contradicting her accounts, her persistence in asserting her claims despite such evidence, and her failure to demonstrate that her ability to perceive was compromised.[41]  These facts and others also support the finding that Ivy acted with intent:  Ivy made a police report accusing Kyzer of stalking on the same day she was scheduled to give a deposition in the litigation with him — and *after* her requests to stay

---

[36]     *See id.* at 761-62, 766.

[37]     ABA STANDARDS, *supra* note 3, at § III (definitions).

[38]     *In re West*, 805 P.2d 351, 356 (Alaska 1991) (citing the ABA Standards).

[39]     *In re Ivy*, 350 P.3d at 762 & n.11 (citing *Adams v. Adams*, 131 P.3d 464, 466-67 (Alaska 2006)); *In re Friedman*, 23 P.3d 620, 626 (Alaska 2001) ("[I]t is permissible to infer that an accused intends the natural and probable consequences of his or her knowing actions." (quoting *In re Triem*, 929 P.2d 634, 648 (Alaska 1996))).

[40]     *In re Ivy*, 350 P.3d at 762.

[41]     *Id*.

that deposition already had been denied. She subsequently testified about the alleged stalking in great detail. And, in this appeal, she admits acting with a selfish motive when giving that testimony. She also continues to rationalize her previous stories rather than acknowledge their incredibility.

Such circumstantial evidence supports the finding that Ivy sought to manipulate the litigation with Kyzer and these disciplinary proceedings. Therefore we agree with the Board that Ivy acted intentionally.

### c.    Injury and potential injury

We also conclude that Ivy's misconduct caused serious actual or potential injury to Kyzer and to the legal system, but not to the public or to the legal profession. The ABA Standards define injury according to the type of duty violated and the extent of actual or potential harm.[42]  Harm ranges from "serious" to "little or no" injury.[43] Potential injury is harm that is "reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."[44]

Ivy contends that she did not cause serious harm to Kyzer, citing a lack of "clear and convincing evidence" in the record. She further contends that whatever potential injury she caused to him was "limited."

As an initial matter, evidence of injury and potential injury need not reach the clear and convincing evidentiary threshold. The ABA Standards, which guide us in

---

[42]    ABA STANDARDS, *supra* note 3, at §§ II, III.

[43]    *Id.*

[44]    *Id.* at § III.

assessing sanctions,[45] "are designed for use in imposing a sanction or sanctions *following* a determination by clear and convincing evidence" of an ethical violation.[46] Accordingly we engage in a two-part inquiry. First we ask if clear and convincing evidence supports concluding that an attorney violated the ethical rules.[47] If we answer in the affirmative, we then consider what level of discipline to impose.[48] We have never before applied the clear and convincing evidentiary threshold to this latter inquiry.

The extreme nature of Ivy's accusations supports our conclusion that Ivy caused Kyzer serious actual or potential injury. Ivy accused Kyzer of criminal sexual assault, a class B felony,[49] and filed an affidavit with the court supporting the allegation. Ivy also enlisted the justice system by making a police report accusing Kyzer of stalking, a class A misdemeanor.[50] She subsequently testified about the alleged stalking incident in detail.

However incredible, such accusations threaten to impose a considerable toll on the accused. A class B felony conviction for criminal sexual assault in the second degree carries a presumptive sentence of 5 to 15 years with a maximum sentence of

---

[45] *In re Friedman*, 23 P.3d 620, 625 (Alaska 2001).

[46] ABA STANDARDS, *supra* note 3, at § III.A.1.3 (emphasis added).

[47] Alaska Bar R. 22(e) ("Bar Counsel will have the burden at any hearing of demonstrating by clear and convincing evidence that the Respondent has . . . committed misconduct as provided in [Bar] Rule 15.").

[48] *See* Alaska Bar R. 15 (defining grounds for attorney discipline); *see also In re Buckalew*, 731 P.2d 48, 52 (Alaska 1986) (adopting ABA framework for imposing attorney discipline sanctions).

[49] AS 11.41.420(b) (sexual assault in the second degree).

[50] AS 11.41.270(c).

99 years.[51] A class A misdemeanor conviction for criminal stalking could result in a one-year prison sentence.[52] Threats of criminal sanctions stand to tarnish the reputation of the accused and to cause emotional distress for the accused and his or her loved ones. For protection a person might reasonably seek legal advice, as Kyzer apparently did here. Moreover Ivy's false accusation about the stalking delayed the litigation; her deposition scheduled for January was conducted in March. This delay could have caused Kyzer to incur substantial, and unnecessary, legal costs.

We also conclude that Ivy's misconduct caused serious injury or serious potential injury to the legal system. An attorney's duties to the legal system include abiding by the substantive and procedural rules that "shape the administration of justice," not using or creating false evidence, and generally refraining from illegal and other improper conduct.[53]

Ivy argues that neither the deposition nor the affidavit caused serious harm to the legal system because the litigation settled "[s]oon after" she testified falsely at the deposition. But Ivy misconstrues the timeline of the litigation. After she testified falsely about the alleged stalking incident at the deposition, the litigation continued for at least another two years; in mid-2010 she falsely alleged that Kyzer assaulted her in a courtroom. And as explained, Ivy's false testimony about the stalking incident delayed the litigation with Kyzer. This delay, at minimum, threatened to impose a substantial and unnecessary burden on the judicial system. We recognize that "lengthy and duplicative

---

[51]    AS 12.55.125(i)(3).

[52]    AS 12.55.135(a).

[53]    ABA STANDARDS, *supra* note 3, at § II (theoretical framework).

-14-                                                7106

filings," similar to those here, can impose significant costs.[54]  And failing to timely comply with discovery requests, as Ivy did, can seriously interfere with proceedings.[55] Further, as the Board concluded, Ivy's false testimony about Kyzer could have led the court to reach false conclusions about the credibility of witnesses.  Such a risk also poses serious injury to the legal system.

However the record does not support concluding that Ivy caused serious actual or potential injury to either the public or the legal profession.  Duties that attorneys owe to the public emphasize the public's right "to trust lawyers to protect their property, liberty, and lives" and the expectation that lawyers act honestly and refrain from conduct that interferes with the administration of justice.[56] Duties to the legal profession similarly include maintaining the integrity of the profession.[57]

We recognize that actions falling below the ABA's standard of conduct diminish the public's confidence in attorneys.[58] Such conduct also threatens the integrity of the legal profession.[59] But here there was little risk of such harm.  The record does not suggest that the public was aware of Ivy's misconduct.  And Ivy claims that she has not practiced law in 15 years.  If this is true, then she has no current clients who would

---

[54]    *In re Shea*, 273 P.3d 612, 622 (Alaska 2012).

[55]    *In re Rice*, 260 P.3d 1020, 1032 (Alaska 2011).

[56]    ABA STANDARDS, *supra* note 3, at § II.

[57]    *Id*.

[58]    *In re Hanlon*, 110 P.3d 937, 947 (Alaska 2005) ("[E]ven minor violations of law by a lawyer may tend to lessen public confidence in the legal profession." (quoting *In re West*, 805 P.2d 351, 355 (Alaska 1991))).

[59]    *Id*.

become aware of this disciplinary action.[60] Therefore the record does not support serious actual or potential injury to the public or to the legal profession.

### 2. Step two: presumptive sanction

If there are multiple instances of misconduct, "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct . . . and generally should be greater than the sanction for the most serious misconduct."[61] The ABA Standards favor disbarment in this case. For example, Standard 5.11(b) recommends disbarment when an attorney intentionally engages in dishonest conduct that "seriously adversely reflects on the lawyer's fitness to practice [law]," as Ivy did here. Similarly Standard 6.11 recommends disbarment when an attorney acts "with the intent to deceive the court, makes a false statement, [or] submits a false document . . . [that] causes serious or potentially serious injury," as Ivy also did. Therefore disbarment, the most severe sanction under the ABA Standards, is the baseline against which we weigh aggravating and mitigating factors[62] — a starting point which the dissent does not appear to dispute.[63]

---

[60] The Bar Association did not refute Ivy's claim, and no evidence in the record suggests otherwise.

[61] ABA STANDARDS, *supra* note 3, at § II (theoretical framework).

[62] The parties dispute whether ABA Standard 5.11(a) also favors disbarment. This dispute is not material to our analysis; the ABA Standards already point to the most severe sanction. *See In re Schuler*, 818 P.2d 138, 142 (Alaska 1991) (concluding that it made "no difference" whether misconduct violated ABA Standard 5.11(a) or 5.11(b) because both standards recommend disbarment); ABA STANDARDS, *supra* note 3, at § II ("The ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct.").

[63] *See* Dissent at 31-44.

### 3. Step three: aggravating and mitigating factors

The ABA Standards provide a nonexclusive list of aggravating and mitigating factors that, on balance, may counsel in favor of modifying the presumptive sanction.[64] When the ABA Standards recommend disbarment, aggravating factors are relevant "only to the extent that they neutralize the mitigating factors."[65]

The Bar Association and Ivy dispute which aggravating and mitigating factors exist and how the factors affect the appropriate sanction. The Board cited several aggravating factors but only one mitigating factor and accordingly concluded that the aggravating factors outweighed the single mitigating factor.[66]

"We independently review the entire record in attorney disciplinary proceedings, though findings of fact made by the Board are entitled to great weight."[67] We agree with the Board's ultimate conclusion: The aggravating factors outweigh the single mitigating factor. However we disagree with some of the Board's analysis.

Like the Board, we conclude that the record supports several aggravating factors. As explained, the record establishes that Ivy acted selfishly. Ivy admits that she

---

[64] *See* ABA STANDARDS, *supra* note 3, at § III.C.9.0.

[65] *In re Friedman*, 23 P.3d 620, 632 (Alaska 2001).

[66] The Board found aggravating factors including a dishonest and selfish motive; a pattern of misconduct; multiple offenses; Ivy's repeated false statements in the disciplinary hearing; Ivy's failure to acknowledge any wrongful conduct; Ivy's experience as an attorney (noting her admission in 1984 and her work at a law firm); a failure to make any restitution efforts until Kyzer's motion for them in the disciplinary proceedings; and Kyzer's potential vulnerability as a result of psychological issues. On appeal the Bar Association claims many of the same factors except it does not claim Ivy's apparent failure to make restitution or Kyzer's vulnerability.

[67] *In re Miles*, 339 P.3d 1009, 1018 (Alaska 2014) (quoting *In re Shea*, 273 P.3d 612, 619 (Alaska 2012)).

acted selfishly in her briefing; her persistent pattern of behavior, the timing of her false accusations, and her failure to acknowledge past wrongs further support the conclusion.[68] These same facts and circumstances also support several other aggravating factors: a pattern of misconduct, multiple offenses, repeatedly making false statements in the disciplinary proceedings, refusing to acknowledge past wrongs, and illegal conduct.[69]

But the record does not support the Board's conclusion that psychological issues made Kyzer vulnerable. Rather the Committee noted that the Committee prevented Ivy from discovering her brother's "personal information." And we find no evidence that might otherwise support the finding. "[T]he Bar has the burden of demonstrating its initial charges against a respondent attorney."[70] Ivy's experience practicing law also should not be considered an aggravating factor. The mere facts that Ivy was admitted to practice in 1984 and once worked at a law firm bear little weight, particularly when nothing in the record refutes Ivy's claim that she has not practiced in 15 years.

As for mitigating factors the Board found one, no prior disciplinary offenses. And it explained why it gave little weight to Ivy's claims that she suffered personal or emotional problems: Ivy "unequivocally denied any past delusional thinking or hallucinatory episodes"; she "offered no evidence from any mental health professional"; and given her conduct in the proceedings, the validity of her claims about the "past altercations she had been subject to at the hands of her brother" could not be ascertained — "her testimony . . . standing alone . . . was not credible." Accordingly the

---

[68]     *See supra* Part IV.A.1.b.

[69]     *See* ABA STANDARDS, *supra* note 3, at § III.C.9.22.

[70]     *In re Rice*, 260 P.3d 1020, 1033 (Alaska 2011).

Board determined it was "not qualified to assess how [the alleged] problems may (or may not) have contributed to Ms. Ivy's wrongful actions."

We agree with the Board's conclusions on mitigating factors. The record lacks evidence of a disciplinary history; this absence qualifies as a mitigating factor.[71] But, as the Board found, the record also lacks evidence of personal or emotional problems. Ivy affirmatively denied such problems, and she produced no evidence supporting how her alleged fear of her brother might support the finding. We give "great weight" to the Board's factual findings;[72] on appeal the respondent attorney "bears the burden of proof in demonstrating that such findings are erroneous."[73] The record supports the Board's findings, and Ivy does not demonstrate how the Board's findings are erroneous. Accordingly we conclude, like the Board, that this mitigating factor is entitled to little, if any, weight. Finally, Ivy's pattern of dishonesty also does not support her claim to good character, an available mitigating factor under the ABA Standards.[74]

---

[71]     *See* ABA STANDARDS, *supra* note 3, at § III.C.9.32(a).

[72]     *In re Miles*, 339 P.3d at 1018 (quoting *In re Rice*, 260 P.3d at 1027); *see also In re Triem*, 929 P.2d 634, 640 (Alaska 1996) ("As a general rule . . . we ordinarily will not disturb findings of fact made upon conflicting evidence." (quoting *In re West*, 805 P.2d 351, 353 n.3 (Alaska 1991))); *id*. at 643 & n.12 ("The committee's finding of dishonesty by Triem during the disciplinary process is adequately supported by the record and we do not find it to be clearly erroneous.").

[73]     *In re Miles*, 339 P.3d at 1018 (quoting *In re Rice*, 260 P.3d at 1027).

[74]     *See* ABA STANDARDS, *supra* note 3, at § III.C.9.32(g). Ivy also claims several other mitigating factors such as an apparent delay in the filing of the grievance, the attorney's fees and cost award, the fact she likely will not commit similar misconduct again, and the non-representative context in which her misconduct arose. We find no support under our prior cases or in the record for Ivy's claims.

We now weigh these aggravating and mitigating factors against the ABA-recommended sanction of disbarment. "[T]here is no 'magic formula' " for balancing aggravating and mitigating factors.[75] Each case demands an independent inquiry[76] in light of the "nature and gravity of the lawyer's misconduct."[77] In balancing the factors, we are sensitive to the risk of double counting.[78] This double-counting risk can arise between the factors themselves; it also can arise when the ABA-recommended sanction or underlying ethical violation turns on the same facts as an aggravating or mitigating factor. We account for this double-counting risk by weighing the factors in light of the circumstances.

We conclude, similar to the dissent,[79] that several of the aggravating factors are repetitious under the circumstances here. For example, Ivy's misconduct — repeatedly lying under oath — supports several aggravating factors: a pattern of misconduct, multiple offenses, a dishonest motive, deceptive practices during the disciplinary proceedings, a refusal to acknowledge misconduct, and illegal conduct.[80]

---

[75]    *In re Hanlon*, 110 P.3d 937, 942 (Alaska 2005) (quoting *In re Friedman*, 23 P.3d 620, 633 (Alaska 2001)).

[76]    *Id*. at 943.

[77]    *In re Buckalew*, 731 P.2d 48, 54 (Alaska 1986).

[78]    *Cf. Juneby v. State* (*Juneby II*), 665 P.2d 30, 36 (Alaska App. 1983) ("[P]resumptive terms are intended to be applicable in typical cases, and not in aggravated or mitigated cases . . . ."); *Juneby v. State* (*Juneby I*), 641 P.2d 823, 838-39 (Alaska App. 1982), *opinion modified and superseded on reh'g on other grounds*, 665 P.2d 30 (Alaska App. 1983) (explaining how to apply aggravating and mitigating factors when imposing criminal sanctions).

[79]    *See* Dissent at 32-35.

[80]    *See* ABA STANDARDS, *supra* note 3, at § III.C.9.22.

To avoid doubly aggravating the sanction for precisely the same acts,[81] we consider the repetitious nature of these factors and weigh them accordingly. Here because Ivy's pattern of misconduct and multiple offenses (both aggravating factors) turn on precisely the same conduct, we give only Ivy's pattern of misconduct — but not multiple offenses — weight at the balancing stage. By contrast, we give some weight to factors that do not turn on exactly the same facts; here this includes Ivy's pattern of misconduct, her dishonest motive, the illegal nature of her misconduct, deceptive practices in the disciplinary process, and her refusal to acknowledge the wrongfulness of her conduct.

We also account for repetition between the facts supporting an aggravating factor and the facts supporting an element of the presumptive sanction or the underlying ethical violation. But the mere existence of repetition does not mean we ignore the aggravating factor at the balancing stage. "[P]resumptive terms are intended to be applicable in typical cases, and not in aggravated or mitigated cases."[82] When an attorney's misconduct exceeds the typical case, we give some weight to the aggravating factor.

Ivy's misconduct exceeds the typical case: She lied in a complex lawsuit involving multiple parties, she falsely reported that her brother had committed criminal acts against her, and she lied in these proceedings to evade discipline for that misconduct. Thus though repetition exists between the aggravating factors and the elements of the presumptive sanction (e.g., Ivy's selfish motive)[83] and between the

---

[81] *Cf. Juneby I*, 641 P.2d at 842 ("precisely the same acts" should not be used to "doubly aggravate[]" offense).

[82] *Juneby II*, 665 P.2d at 36.

[83] For example, ABA Standards 5.11(b) and 6.11 apply only when an attorney acts intentionally. We concluded that Ivy acted intentionally in part because we found
(continued...)

aggravating factors and the elements of the underlying ethical violations (e.g., Ivy's dishonest conduct),[84] we give *some* weight to these aggravating factors at the balancing stage. But in doing so we account for the double-counting risk, which arises from the similarity of the factual circumstances, by appropriately weighing the factors.

Acknowledging the risk of double counting, we conclude that the five aggravating factors — Ivy's pattern of misconduct, its illegal nature, her dishonest motive, deceptive practices during the disciplinary process, and refusal to acknowledge the wrongfulness of her actions — outweigh the single mitigating factor, Ivy's lack of disciplinary record. Therefore we do not reduce the presumptive sanction of disbarment.[85]

### 4. Our case law

Our prior cases also support disbarment.[86] Previously we have reduced an ABA-recommended sanction given the presence of several compelling mitigating factors,

---

[83] (...continued)
she acted selfishly; Ivy's selfish motive is also an aggravating factor. If Ivy's misconduct reflected the typical case, we would not give Ivy's selfish motive any weight at the balancing stage.

[84] For example, Alaska Rule of Professional Conduct 8.4(c) and Bar Rule 15(a)(3) are violated only when an attorney engages in dishonest conduct. Here such dishonest conduct also supports several aggravating factors, including a pattern of misconduct, multiple offenses, and obstruction of the disciplinary process. But because Ivy's misconduct exceeds the typical case, we give these factors some weight at the balancing stage.

[85] *See In re Friedman*, 23 P.3d 620, 632 (Alaska 2001) (when ABA Standards recommend disbarment, aggravating factors are relevant "only to the extent that they neutralize the mitigating factors.").

[86] *See In re Buckalew*, 731 P.2d 48, 52 (Alaska 1986) (We consider our precedents to "ensure a level of consistency necessary for fairness to the public and the legal system.").

such as evident remorse, active efforts to remedy the problems caused, and voluntarily notifying authorities about the misconduct soon after it occurred.[87] Such compelling mitigating factors are entirely absent here. Instead Ivy continues her fabrications, and she actively denies any misconduct. Further the only factor counseling against disbarment is Ivy's lack of disciplinary record. Even for a practicing attorney this factor is not particularly compelling. Yet here Ivy apparently has not practiced for 15 years; accordingly the fact that she has not faced any discipline during this period is unremarkable. And though we have explained that we "place a great deal of weight on the absence of dishonest and selfish motives,"[88] such circumstances are not present here.[89]

---

[87] *See, e.g.*, *In re Friedman*, 23 P.3d at 632-34 (suspending attorney for three years, despite ABA-recommended disbarment, for mismanaging client funds and felony conduct given compelling mitigating factors including remorse, evidence that attorney had taken "significant measures" to remedy the problems caused, and good character); *In re Mann*, 853 P.2d 1115, 1117-20 (Alaska 1993) (suspending attorney for three years, despite ABA-recommended disbarment, for misappropriating client funds given compelling mitigating factors including strong evidence of remorse, well-established personal and emotional problems, and voluntarily turning himself in to police within one month of misconduct when misconduct likely would have gone undiscovered).

[88] *In re Rice*, 260 P.3d 1020, 1033 (Alaska 2011).

[89] Given the absence of compelling mitigating factors, we find the dissent's reliance on cases like *In re Schuler* and *In re Stump* misplaced. Dissent at 38-40. *In re Schuler* reduced the presumptive sanction of disbarment for a conviction of misdemeanor theft because of the absence of any aggravating factors and the presence of several compelling mitigating factors, including the lack of a prior disciplinary record, personal and emotional problems for which the attorney was treated by a psychiatrist, criminal sanctions that imposed a 1.5-year probation and 100 hours of community service, the attorney's evident remorse, and fact the attorney's misconduct arose from a self-destructive motive — not from a desire for personal gain, as here. 818 P.2d 138, 139-45 (Alaska 1991).

(continued...)

By contrast, when aggravating factors outweigh mitigating factors we impose the more severe sanction, including disbarment.[90] A "lack of cooperation" in the disciplinary proceedings — or deliberate interference, as here — merits "additional disciplinary action."[91] We also have found disbarment warranted when the attorney's misconduct threatens significant injury and when it is part of a larger scheme to defraud, as we did in *In re Buckalew*.[92] Under such circumstances, disbarment may be warranted even if compelling mitigating factors might otherwise favor a lesser sanction.[93] Ivy's

---

[89]    (...continued)
Similarly in *In re Stump* the attorney admitted to the alleged acts of professional misconduct, and he presented evidence of several mitigating factors, including emotional concerns arising from his wife's health and notification to counsel of his misconduct. 621 P.2d 263, 263-66 (Alaska 1980). Moreover, though *In re Stump* cited a preliminary draft of the ABA Standards, as the dissent notes, dissent at 40 n.30, the court's reliance on the draft standards was minimal. It cited the draft only to frame the respondent attorney's argument, *id.* at 265 & n.6, and to support the rather fundamental assertion that we consider the facts of each case. *Id.* at 265-66 & n.10. We adopted the ABA Standards six years after *In re Stump*; that 1986 version recommended sanctions based on cases decided between 1980 and 1984, data which post-dates our decision in *In re Stump*. *In re Buckalew*, 731 P.2d 48, 51 & n.10 (Alaska 1986).

[90]    *See, e.g.*, *In re Miles*, 339 P.3d 1009, 1018-20 (Alaska 2014) (disbarring attorney for defrauding client and committing criminal theft, per ABA recommendation, when several aggravating factors neutralized the single mitigating factor, cooperation in disciplinary proceedings).

[91]    *In re Rice*, 260 P.3d at 1036.

[92]    731 P.2d 48, 53-56 (Alaska 1987) (rejecting five-year suspension as insufficient for knowing conversion of client funds and forging of a judge's signature despite compelling mitigating factors, including mental and emotional problems, given significant risk of serious injury to client and legal system); *see also In re Rice*, 260 P.3d at 1036 (explaining *In re Buckalew*, 731 P.2d 48).

[93]    *See, e.g.*, *In re Buckalew*, 731 P.2d at 53-56 (identifying as mitigating
(continued...)

misconduct threatened substantial injury, it was calculated to influence the litigation with Kyzer and these disciplinary proceedings, *and* the record lacks evidence of any compelling mitigating factors.

To conclude that disbarment is too severe, the dissent analogizes to our brief order in *In re Purdy* approving a stipulated five-year suspension.[94] But simply because we approved the stipulation does not mean we agree with all of its analysis. Contrary to the stipulation's conclusion, the non-representative context does not constitute a mitigating factor. Like aggravating factors, we do not mitigate a presumptive sanction when the presumptive sanction and the mitigating factor turn on exactly the same facts.[95] Under the ABA Standards the presumptive sanction accounts for the non-representative context. Similar to the Alaska Rules of Professional Conduct,[96] the Standards categorize recommended sanctions based on the context in which an attorney's misconduct arises. For example, ABA Standards 4.0 to 4.6 guide the presumptive sanction when an attorney's misconduct implicates duties owed to clients; the more

---

[93]    (...continued)
factors mental and emotional problems, cooperation and disclosure after law partner discovered misconduct, and no record of prior misconduct). The dissent distinguishes *In re Buckalew* and other cases in which we have imposed disbarment on the grounds that the attorneys' conduct in those cases was far more culpable. Dissent at 41-42. While this may be true, extreme cases do not establish the minimum threshold for imposing a sanction. Rather our case law guides us in evaluating the ABA-recommended baseline.

[94]    Dissent at 38-39 (citing *In re Purdy*, No. S-08996 (Alaska Supreme Court Order, Mar. 26, 1999)).

[95]    *See supra* Part IV.A.3.

[96]    *See In re Ivy*, 350 P.3d 758, 762-65 (Alaska 2015) (holding that Rules 3.3 and 3.4 did not apply to Ivy's misconduct "because these rules are intended to govern attorneys when they are acting as advocates and not in their personal capacities").

severe the conduct with respect to a client, the more severe the sanction. By contrast, and as here,[97] ABA Standards 5.0 to 5.2 guide the presumptive sanction when the misconduct implicates duties owed to the public, and ABA Standards 6.0 to 6.3 guide the presumptive sanction when the misconduct violates duties owed to the legal system. Sanctions for such violations may include disbarment regardless of whether the misconduct relates to client matters.[98] The context in which an attorney's misconduct arises also might affect our evaluation of the severity of harm, as it did here;[99] this variable may affect the presumptive sanction.[100] Under our framework, we account for the context *before* we arrive at the presumptive sanction.[101]

---

[97]     *See supra* Part IV.A.2.

[98]     *See, e.g.*, ABA STANDARDS, *supra* note 3, at § III.C.5.11(b) (recommending disbarment when attorney engages in "intentional conduct involving dishonesty . . . that seriously adversely reflects on the lawyer's fitness to practice"); *id.* § III.C.6.11 (recommending disbarment when attorney, "with the intent to deceive the court, makes a false statement . . . and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding").

[99]     *See supra* Part IV.A.1.c.

[100]     *Compare* ABA STANDARDS, *supra* note 3, at § III.C.5.11(b) (recommending disbarment regardless of whether misconduct presents risk of serious harm), *with id.* § III.C.6.11 (recommending disbarment only if misconduct presents risk of serious harm).

[101]     At most, *In re Purdy* presents another example of mitigating factors outweighing aggravating factors. The stipulation in *In re Purdy*, unlike here, found evidence of several mitigating factors, which we previously have found compelling: cooperation in the disciplinary proceedings (assisting bar counsel in its investigation, consenting to discipline), a good reputation for sound judgment, honesty, and public service (as evidenced by letters of public support), other sanctions (criminal sentence, extended probation at place of employment, harmful publicity), and evident remorse. *In re Purdy*, No. S-08996 (Stipulation for Suspension, filed Mar. 8, 1999, at 10-11). The

(continued...)

Further the severity of Ivy's misconduct and the lack of compelling mitigating factors distinguishes *In re Purdy*. Purdy lied in an administrative matter involving only herself in an effort to get a personal advantage vis-à-vis the government.[102] Ivy lied in a complex lawsuit involving multiple parties, including her brother; she lied to the police, in a deposition, and to the court in an affidavit — all in an effort to get her brother in trouble and to obtain an unfair advantage over her brother in that litigation. Given the seriousness of and risk of harm from Ivy's lies about her brother, Purdy's lies pale in comparison. The important distinction is that without discussing Purdy's stipulated facts and the three-step ABA analysis for Purdy's suspension, including aggravating and mitigating factors, drawing useful comparisons is difficult. Only if the analytic framework — including the ABA starting point and the aggravating and mitigating factors — is irrelevant does *In re Purdy*'s outcome become relevant to the result here.[103]

We demand that attorneys act with integrity whether or not they are representing a client:

> Once admitted [to the bar], the requirement of good moral character does not cease to exist. . . . Society allows the legal profession the privilege of self-regulation. Thus, it is of the

---

[101]    (...continued)
stipulation cited only three aggravating factors, two of which overlap with the presumptive sanction and the ethical violation: a dishonest/selfish motive, a pattern of misconduct, and a prior private admonition for misconduct. *Id.*

[102]    *In re Purdy*, No. S-08156 at 1-4 (Alaska Supreme Court Order, Nov. 18, 1998).

[103]    *In re Purdy*, No. S-08996. The dissent also points to *In re Stepovich*, 143 P.3d 963 (Alaska 2006). Dissent at 41-42. But like *In re Purdy*, the brief decision in *In re Stepovich* does not provide insight into the court's rationale; thus that case also does not facilitate meaningful comparison.

utmost importance that the public have confidence in the profession's ability to discipline itself . . . .[104]

Under the ABA Standards and our case law, Ivy's lack of integrity, self-interested motives, and evident disregard for how her misconduct gravely threatened others and the legal system warrants disbarment.

### B.      The Record Supports The Board's Attorney's Fees And Costs Award.

Ivy contends that, at minimum, the Board's attorney's fees and costs award should be "dramatically reduced." Previously we found "no fault with the attorney's fees award."[105] We determined that the Board complied with Alaska Bar Rule 16(c)(3), which authorizes disciplinary boards to award attorney's fees and costs upon consideration of ten statutorily enumerated factors.[106] And we explained that even if Ivy *had* properly raised the issue of attorney's fees and costs, it was "not apparent from th[e] record how the Bar Association's fees and costs would have been different had it based its investigation and proceeding solely on Ivy's violation of Rule 8.4."[107] We accordingly acknowledged that the Board "may revise the award," but we did not require the Board to do so.[108]

As before Ivy does not demonstrate why the Board's award is flawed. Under Bar Rule 16(c)(3), the amount of an award does not turn on who prevailed on a given issue. Instead the Rule requires the Board to consider, among other factors, "the

---

[104]      *In re Buckalew*, 731 P.2d at 56.

[105]      *In re Ivy*, 350 P.3d 758, 766 (Alaska 2015).

[106]      *Id.* at 765-66 & n.35.

[107]      *Id.* at 765-66 & n.34 (issue of attorney's fees waived because it was not addressed in opening brief).

[108]      *Id*. at 766.

*reasonableness* of the number of hours expended by Bar Counsel and the *reasonableness* of the costs incurred"[109] as well as "the relationship between the amount of work performed by Bar Counsel and the significance of the matters at stake."[110] The Bar Association made sound arguments that related to an issue of first impression: Never before had we considered whether Rules of Professional Conduct 3.3 and 3.4 apply in the non-representative context, neither rule refers to a client relationship, and neither necessarily implies a representative context. Simply because Ivy prevailed in her argument that Rules 3.3 and 3.4 did not apply does not render the attorney's fee and cost award too high.

Moreover, under Bar Rule 16(c)(3), the Board also shall consider "the duration of the case,"[111] "the reasonableness of the defenses raised by the Respondent,"[112] and the respondent's "vexatious or bad faith conduct."[113] We give "great weight" to the Board's findings of fact;[114] such findings include facts related to the attorney's conduct in the disciplinary proceedings. Here the Board found that the disciplinary matter had lasted for more than two years and that Ivy had acted unreasonably, including by refusing "to admit the falsity of her affidavit and deposition testimony" and by asserting a "defense of not 'knowingly' . . . offer[ing] false testimony" — despite presenting no

---

[109]      Alaska Bar R. 16(c)(3)(C) (emphases added).

[110]      *Id.* (H).

[111]      *Id.* (B).

[112]      *Id.* (F).

[113]      *Id.* (G).

[114]      *In re Miles*, 339 P.3d 1009, 1018 (Alaska 2014) (quoting *In re Shea*, 273 P.3d 612, 619 (Alaska 2012)).

credible evidence in that regard. Such actions, as the Board found, undoubtedly increased Bar Counsel's expenses and made the proceedings unnecessarily complex.

Therefore, as before, we uphold the fee and cost award.

## V. CONCLUSION

Deborah Ivy is DISBARRED from the practice of law effective 30 days from today. Ivy must also comply with the Board's fee and cost award.

FABE, Chief Justice, dissenting.

I respectfully disagree with the court's decision to disbar Deborah Ivy.  I agree that Ivy violated Alaska Rules of Professional Conduct 8.4(a), (b), and (c) by lying about the stalking incident in the parking lot and the alleged sexual assault by her brother in the courtroom.  And she violated Alaska Bar Rule 15 by continuing to maintain her fabricated version of these events before the Board.  But it is my view that disbarment of Ivy for being untruthful in the course of her own highly emotional personal family litigation is unnecessarily severe.

All of the various aggravators applied by the court essentially boil down to this:  Ivy was untruthful during her combative personal family dispute and consistently maintained her false account during the Bar proceedings.  Thus the very falsehoods that were necessary elements of the two core violations of the rules have impermissibly provided the basis for the aggravating factors.

Moreover, the court has ignored the significant mitigating factor of Ivy's personal and emotional problems, resulting from years of a contentious personal relationship with her brother.  And Ivy's falsehoods did not arise in the context of her representation of a client.  Finally, there is no example in all of our prior disciplinary decisions that would support disbarment in Ivy's case.  Though Ivy's conduct is unworthy of our profession and merits the severe sanction of a five-year suspension, it does not warrant disbarment.

As a separate matter, Ivy's attorney's fee obligation should be reduced in light of the fact that she prevailed on the issue of the application of Rules of Professional Conduct 3.3 and 3.4.

# I. IVY'S CONDUCT WARRANTS A SUSPENSION OF FIVE YEARS INSTEAD OF DISBARMENT.

## A. The Aggravating Factors Applied Against Ivy Were Necessary Elements Of Her Violation.

The court concludes that "five aggravating factors — Ivy's pattern of misconduct, its illegal nature, her dishonest motive, deceptive practices during the disciplinary process, and refusal to acknowledge the wrongfulness of her actions — outweigh the single mitigating factor, Ivy's lack of disciplinary record."[1]  But all of these aggravating factors are based on the same conduct for which Ivy is being disciplined and thus are not properly applied as aggravators.  The sole basis for the conclusion that Ivy violated Alaska Rules of Professional Conduct 8.4(a), (b), and (c) and Alaska Bar Rule 15(a)(3) is the finding that Ivy lied about the alleged instances of stalking and assault both in her court case and before the Bar once the grievance was filed.[2]  And the aggravating factors rely on precisely the same conduct as that for which Ivy is being disciplined:  (1) a "pattern of misconduct" (by lying under oath on more than one occasion in the course of her personal litigation with her brother); (2)  the "illegal

---

[1]    Op. at 22.

[2]    Rule 8.4(a) states that it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct."  Here, she allegedly violated the rules only by lying under oath about the alleged incidents with her brother.  Rule 8.4(b) designates it misconduct to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects."  Again, the criminal act reflecting adversely on Ivy's honesty and trustworthiness was her perjury regarding those same incidents.  Rule 8.4(c) similarly prohibits attorneys from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation."  Yet again, Ivy's alleged lies are the only conduct involving dishonesty.  Finally, Bar Rule 15(a)(3) prohibits "knowing misrepresentation of any facts or circumstances surrounding a grievance."  Ivy committed this violation by continuing to lie.  But for her lying about the incidents with her brother, Ivy could not have been found to have violated any of these Rules; her lying is therefore a necessary element of each offense.

nature" of her conduct (by lying under oath in the course of her personal litigation with her brother); (3) a "dishonest motive" (by lying under oath in the course of her personal litigation with her brother in which monetary relief was at stake); (4) "deceptive practices during the disciplinary process" (by maintaining the truth of her false statements made in the course of her personal litigation with her brother during the disciplinary process); and (5) a "refusal to acknowledge the wrongfulness of her actions" (by maintaining the truth of her false statements made in the course of her personal litigation with her brother during the disciplinary process).[3] These aggravating factors do little more than restate the underlying violation: that Ivy lied about the stalking incident in the parking lot and the alleged sexual assault both in the courtroom and during the disciplinary process.

Both of Ivy's falsehoods are therefore necessary elements of Ivy's two disciplinary violations and the basis of all of the aggravating factors applied by the court. In the criminal law context, the legislature has directed that "[i]f a factor in aggravation is a necessary element of the present offense . . . that factor may not be used to impose a sentence above the high end of the presumptive range."[4] Thus, conduct that constitutes an element of the offense itself cannot be applied against the offender as an aggravating factor. The same rationale should apply in the attorney discipline context. When an attorney misappropriates funds, we do not apply "misappropriation of funds" as an aggravating factor in the violation. Relying on dishonesty as an aggravating factor when the underlying offense is dishonesty is also impermissible.

Other jurisdictions have explicitly applied this reasoning to attorney discipline cases. For example, in *People v. Kolhouse*, a case from Colorado, the court refused to count a respondent's failure to comply with requests for information and

---

[3]     Op. at 22.

[4]     AS 12.55.155(e).

refusal to acknowledge the wrongful nature of her conduct as aggravating factors because those factors were "based on the same conduct underlying one of Respondent's rule violations" and there were "no additional allegations or evidence" that supported application of those factors.[5] And in *In re Whitt*, the Supreme Court of Washington held that because submission of false evidence was part of the factual basis for one of the respondent's violations, it could not also be applied against the respondent as a "separate aggravating factor."[6]

---

[5] 309 P.3d 963, 966 (Colo. O.P.D.J. 2013).

[6] 72 P.3d 173, 180 (Wash. 2003). The appellate level of the State Bar Court of California has also consistently adhered to the "long established principle that it is inappropriate to use the same conduct relied on to establish a disciplinary violation to establish an aggravating circumstance." *In re Silverton*, Nos. 95-O-10829, 99-O-13251, 2004 WL 60709, at *16 (Review Dep't of the State Bar Ct. of Cal., Jan. 6, 2004); *see also In re Sampson*, No. 90-O-17703, 1994 WL 454888, at *12 (Review Dep't of the State Bar Ct. of Cal., Aug. 16, 1994) ("It appears that the hearing judge used the same conduct constituting the . . . violation as a finding in aggravation of the same charge. This is inappropriate."); *In re Burckhardt*, No. 88-O-15079, 1991 WL 16498, at *6 (Review Dep't of the State Bar Ct. of Cal., Feb. 4, 1991) (holding that because a finding of aggravation for conduct involving bad faith, dishonesty, and concealment "reflect[ed] the same conduct . . . that is properly the basis for the finding of [the] violation," the "finding in aggravation [was] duplicative"); *In re Trillo*, No. 85-0-13726, 1990 WL 92610, at *9 (Review Dep't of the State Bar Ct. of Cal., May 3, 1990) (declining to adopt a finding that a respondent made misrepresentations to his clients because the court had "already adopted such a finding of culpability and [did] not believe it appropriate to assign aggravation to the identical conduct"); *In re Mapps*, Nos. 87-0-12533, 87-0-11669, 1990 WL 92624, at *7 (Review Dep't of the State Bar Ct. of Cal., Mar. 27, 1990) (noting that because the court had already concluded that a respondent had embezzled clients' funds, constituting moral turpitude, the same conduct could not be "count[ed] . . . again as a separate aggravating factor").

Here, despite "[a]cknowledging the risk of double counting,"[7] the court has improperly applied the same facts that formed the basis of the disciplinary violations as separate aggravating factors.

**B.** **The Court And The Board Have Ignored A Significant Mitigating Factor: Ivy's Personal And Emotional Problems.**

The court is incorrect in concluding that "as the Board found, the record also lacks evidence of [Ivy's] personal or emotional problems."[8]  In fact, the Board recognized that "it appeared . . . that Ms. Ivy exhibited some evidence of personal and/or emotional problems regarding her relationship with her brother."  But the Board nevertheless determined that it was "not qualified to assess how these problems may (or may not) have contributed to Ms. Ivy's wrongful actions" and thus discounted her personal and emotional problems as mitigating factors.  Yet the American Bar Standards for Imposing Lawyer Sanctions expressly recognize "personal or emotional problems" as a mitigating factor.[9]  The Board apparently conflated this factor with the separate mitigating factor of "mental disability"[10] because it seemed to fault Ivy for failing to offer "evidence from any mental health professional" and observed that Ivy had denied a history of "delusional thinking or hallucinatory episodes."

Here, Ivy was in the midst of contentious family litigation when she lied about her brother's actions, and by her account, the antagonistic relationship with her

---

[7]    Op. at 22.

[8]    Op. at 19.

[9]    STANDARDS FOR IMPOSING LAWYER SANCTIONS § III.C.9.32(c) (AM. BAR ASS'N 1992) [hereinafter ABA STANDARDS].

[10]    *Id.* § III.C.9.32(i).

brother had persisted "for decades."[11]  At the formal disciplinary hearing, Ivy testified to the "verbal [and] emotional abuse" that Kyzer allegedly committed against her in the past, asserting that she was "very frightened of ever being alone with him."  And as we noted the first time this matter was before us, the siblings' relationship had become "so acrimonious"[12] that the superior court issued a mutual no-contact order between Kyzer and Ivy in 2007, and a provision in their 2008 settlement agreement prohibited contact between the siblings.  While involvement in any litigation process "can produce anger, anxiety, stress, hurt, hard feelings, or other strongly negative emotional reactions that diminish [a] client's psychological wellbeing,"[13] family disputes "often involve participants under especially intense emotional stress which can cloud their judgment."[14] And here, the acrimony in the litigation exceeded even the typical stress attendant to a family dispute.  The close connection between Ivy's improper conduct and her contentious relationship with her brother places her behavior in context — a context that sheds meaningful light on Ivy's conduct without justifying or excusing it.[15]  The court's

---

[11]     *In re Ivy*, 350 P.3d 758, 759 (Alaska 2015).

[12]     *Id.* at 759.

[13]     Bruce Winick, Symposium, *Therapeutic Jurisprudence and the Role of Counsel in Litigation*, 37 CAL. W. L. REV. 105, 108 (2000).

[14]     Andrew Schepard, *An Introduction to the Model Standards of Practice for Family and Divorce Mediation*, 35 FAM. L. Q. 1, 2 (2001).

[15]     "Although personal or emotional problems . . . are mitigating factors that may reduce a disciplinary sanction against an attorney, they do not justify or excuse the attorney's misconduct.  Nor do they shield the attorney from professional responsibility. Rather, they are offered and considered merely as explanations of the lawyer's conduct in order to temper the imposed sanction." *In re Rau*, 533 N.W.2d 691, 694 (N.D. 1995) (internal citations omitted).

failure to consider that stress as a mitigating factor takes Ivy's conduct out of context and ignores the personal and emotional problems that she was experiencing.

## C. Our Prior Decisions Do Not Support Disbarment In This Case.

Finally, the sanction of disbarment in this case is wholly inconsistent with our prior disciplinary decisions. In the past, we have taken into account the fact that attorney misconduct has occurred in a personal, non-representative capacity.[16] Yet the court has failed to give weight to this factor in Ivy's case.[17] The ABA Standards reflect the greater severity of misconduct committed within the practice of law, noting that "the most important ethical duties are those obligations which a lawyer owes to clients."[18] Our own decisions and those of other states reflect this distinction.[19] The fact that Ivy's misconduct took place within the circumstances of her personal litigation, and was

---

[16] *In re Schuler*, 818 P.2d 138, 142, 144 (Alaska 1991) (observing that "[i]t is also worthy of note that Schuler's conduct did not take place in connection with . . . services performed in the practice of law" and contrasting this case with another in which "[t]he misconduct occurred in connection with services performed by [the attorney] in the practice of law"); *cf. In re Miles*, 339 P.3d 1009, 1020 (Alaska 2014) (noting that duplicitous acts by an attorney were "particularly" damaging when committed "while acting in her capacity as an attorney").

[17] Op. at 25-26.

[18] ABA STANDARDS, *supra* note 9, at § II.

[19] We have observed that "[t]here are few more egregious acts of professional misconduct . . . than the misappropriation of [a] client's funds held in trust." *In re Buckalew*, 731 P.2d 48, 55 (Alaska 1986) (quoting *In re Beckman*, 400 A.2d 792, 793 (N.J. 1979)); *see also In re Richmond*, 996 So. 2d 282, 289 (La. 2008) (recognizing that because an attorney "was acting in his personal capacity . . . [and there was therefore] no potential for client harm from [his] misconduct, his actions may be viewed as less egregious than the actions at issue" in cases involving attorneys acting in representative capacities).

wholly unrelated to representation of a client, supplies important context. At the very least, that context may mitigate the risk of Ivy harming clients.[20]

While I agree that attorneys can be subject to disbarment for violations committed outside of a representative capacity, we have approved such a severe sanction in only one case, where an attorney was convicted as an accessory after the fact to a first-degree murder.[21] In other cases in which attorneys have committed offenses in their personal capacities, we have adopted far less stringent sanctions. For example, in *In re Schuler*, we accepted a two-year suspension for a district attorney convicted of misdemeanor theft for the second time despite the ABA-recommended disbarment.[22]

And another disciplinary case, *In re Purdy*, is particularly instructive because the respondent's dishonest conduct and perjured testimony occurred outside of a representative capacity.[23] Frances Purdy forged vehicle title documents, misused her notary seal, and committed an act of perjury in an Anchorage Parking Authority

---

[20] Moreover, we have held that the non-representative context of Ivy's conduct rendered Rules of Professional Conduct 3.3 and 3.4 inapplicable and therefore rejected the Board's recommendation of disbarment to the extent that it was based on those rules. *In re Ivy*, 350 P.3d 758, 762-65 (Alaska 2015). Yet, on remand the Board refused Ivy's request to present additional argument on the proper disciplinary sanction. Instead, it summarily recommended the same sanction of disbarment, despite correspondence from Ivy's attorney indicating that she "wanted to be heard."

[21] *In re Webb*, 602 P.2d 408 (Alaska 1979), *abrogated by In re Buckalew*, 731 P.2d at 48 (adopting the ABA's sanctions standards). Ivy's conduct does not approach the conduct for which the attorney in *In re Webb* was disbarred.

[22] 818 P.2d 138 (Alaska 1991).

[23] No. S-08156 (Alaska Supreme Court Order, Nov. 18, 1998).

proceeding in an attempt to evade paying a parking ticket for expired tags.[24] Purdy was convicted of and sentenced for misdemeanor forgery based upon this misconduct.[25] Bar Counsel and Purdy entered into a Stipulation for Discipline by Consent, which called for a five-year suspension,[26] and we approved that stipulation,[27] which contained a detailed analysis of Purdy's conduct and the applicable aggravating and mitigating factors under the ABA standards.[28] The stipulation recognized that disbarment is generally appropriate where a lawyer engages in serious criminal conduct, involving falsely swearing, misrepresentation, or fraud, or where a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation. And among the aggravating and mitigating factors applied in Purdy's case were Purdy's prior disciplinary offense, her dishonest or selfish motive, her criminal conviction, her expression of remorse, and her cooperative attitude toward disciplinary authorities. But the Bar and Purdy stipulated that "[a]dditional factors that may be considered in mitigation include the following: Ms. Purdy's conduct did not cause monetary loss to any person; *the conduct did not affect any client; and the conduct did not occur within the practice of law.*"[29]

Similarly, in *In re Stump*, we approved a five-year suspension for an attorney who falsified evidence for use on his own behalf in civil litigation in which he

---

[24] *In re Purdy*, No. S-08996 (Stipulation for Suspension, filed Mar. 8, 1999, at 2-5).

[25] *Id.* at 4.

[26] *Id.* at 11.

[27] *In re Purdy*, No. S-08996 (Alaska Supreme Court Order, Mar. 26, 1999).

[28] *In re Purdy*, No. S-08996 (Stipulation for Suspension, filed Mar. 8, 1999, at 10).

[29] *Id.* (emphasis added).

was a defendant and subsequently affirmed the authenticity of that evidence under oath.[30] Purdy and Stump both testified falsely under oath in their non-representative capacities. Here, Ivy also lied in her personal litigation; yet, rather than a five-year suspension, the court has ordered her disbarment. Such a disparity is unsupported and unjust.

Further, even when attorneys *have* committed violations in representative capacities involving dishonest misappropriation of client funds that directly harmed a client, the resulting sanctions have been much less severe than Ivy's. In *In re Stepovich*, *In re Friedman*, and *In re Mann*, all cases involving attorneys who misappropriated client funds, we reduced sanctions from the ABA-recommended disbarment to suspensions of two or three years,[31] despite the fact that we have recognized that "[t]here are few more egregious acts of professional misconduct . . . than the misappropriation of [a] client's funds held in trust."[32] And in *In re Rice*, we approved a suspension of four years for an attorney who misappropriated client funds and "cause[d] [his clients] potential harm, which is sufficient under the ABA Standards to justify even the harshest sanctions, . . . and . . . arguably cause[d] actual harm to public trust in the legal system."[33] We justified the harsher four years — as opposed to the three-year suspensions given in

---

[30] 621 P.2d 263 (Alaska 1980), *abrogated by In re Buckalew*, 731 P.2d 48 (Alaska 1986). While *In re Stump* and other earlier cases were abandoned by our decision in *Buckalew* to adopt the ABA Standards, our decision in *Stump* nevertheless relied on the Standards and should be considered instructive here. *Id.* at 265 n.6 & n.10 (referencing the 1979 draft ABA Standards for Lawyer Discipline and Disability Proceedings).

[31] *In re Stepovich*, 143 P.3d 963 (Alaska 2006); *In re Friedman*, 23 P.3d 620 (Alaska 2001); *In re Mann*, 853 P.2d 1115 (Alaska 1993).

[32] *In re Buckalew*, 731 P.2d at 55 (quoting *In re Beckman*, 400 A.2d 792, 793 (N.J. 1979)).

[33] 260 P.3d 1020, 1035 (Alaska 2011).

*Friedman* and *Mann* — in part because the Bar found that Rice exhibited a "lack of remorse"[34] and had not turned himself in.[35] In all of these cases, the attorneys committed one of the most serious forms of professional misconduct, yet they received suspensions ranging from two to four years. Although Ivy's misconduct was limited to the context of her contentious and painful personal litigation, she is to be disbarred from the practice of law.

Moreover, a review of cases in which we have approved disbarment of attorneys reveals the extent to which Ivy's disbarment represents a departure from precedent. In *In re Buckalew*, we recommended disbarment as an appropriate sanction for an attorney who fabricated a false settlement document, forging the signatures of another attorney and a superior court judge, and embezzled $67,000 from two client trust accounts.[36] In *In re Miles*, we found disbarment warranted when the attorney misappropriated more than $20,000 of a deceased client's funds and then deceptively concealed that conduct.[37] And in *In re Wiederholt*, we disbarred an attorney after eight separate parties filed grievances against the attorney for conduct including putting an unauthorized signature on a check, making improper sexual advances to a client, kicking opposing counsel, improperly delaying discovery, threatening to disclose client confidences, contacting an opposing party after being notified that the party was represented by an attorney, and filing an improper claim on behalf of a client to funds

---

[34] *Id.* at 1033.

[35] *Id.* at 1035.

[36] 731 P.2d at 48.

[37] 339 P.3d 1009 (Alaska 2014).

deposited in court.[38]  Ivy's conduct simply does not rise to the egregious level of the actions that resulted in disbarment of these attorneys.

We have recognized that the ABA Standards promote uniformity and prevent "[i]nconsistency of sanctions."[39]  This "goal was one of the major driving forces behind promulgation of the ABA Standards."[40]  The introduction to the Standards notes that "[i]nconsistent sanctions, either within a jurisdiction or among jurisdictions, cast doubt on the efficiency and the basic fairness of all disciplinary systems."[41]  Here, the court's order disbarring Ivy is entirely inconsistent with our previous discipline decisions and thereby undermines the fundamental purpose of our reliance on the ABA Standards.

## II.    ATTORNEY'S FEES

Finally, I disagree with the court's decision to affirm the attorney's fee award of $61,282.75 against Ivy.  An evaluation of the ten enumerated factors to be considered under Alaska Bar Rule 16 when determining an appropriate award of attorney's fees does not support the award.[42]  Although the Board found that Ivy's

---

[38]    877 P.2d 765, 766 (Alaska 1994).

[39]    *In re Buckalew*, 731 P.2d at 52 n.13.

[40]    *Id.*

[41]    ABA STANDARDS, *supra* note 9, at § I.A.

[42]    Rule 16(c)(3) lists the following factors to be considered:

    (A)    the complexity of the disciplinary matter;

    (B)    the duration of the case;

    (C)    the reasonableness of the number of hours expended by Bar Counsel and the reasonableness of the costs incurred;

    (D)    the reasonableness of the number of Bar Counsel used;

(continued...)

attorney "tested the limits of zealous advocacy" and made the disciplinary proceedings unnecessarily complex, apparently applying the factor relating to "the reasonableness of the defenses raised by the Respondent,"[43] at least one of Ivy's defenses was well-taken. We ruled in Ivy's favor in concluding that the Alaska Rules of Professional Responsibility 3.3 and 3.4 were inapplicable to her case. This seems to suggest that her attorney's advocacy was appropriately zealous on that issue. And the attorney's fees were never reduced to reflect that Ivy was successful in her argument that Rules 3.3 and 3.4 did not apply.[44] For that reason alone, the fees must be reduced. It is unclear why Ivy should be required to pay attorney's fees for time spent litigating the question of the applicability of Rules 3.3 and 3.4 when she was successful in that effort. Her obligation should be reduced accordingly.

## III.  CONCLUSION

I respectfully dissent from the court's decision to disbar Ivy. I believe a five-year suspension from the practice of law is the correct sanction for Ivy's conduct

---

[42]    (...continued)

(E)    Bar Counsel's efforts to minimize fees;

(F)    the reasonableness of the defenses raised by the Respondent;

(G)    vexatious or bad faith conduct by the Respondent;

(H)    the relationship between the amount of work performed by Bar Counsel and the significance of the matters at stake;

(I)    the financial ability of the Respondent to pay attorney's fees; and

(J)    the existence of other equitable factors deemed relevant.

[43]    Rule 16(c)(3)(F).

[44]    *In re Ivy*, 350 P.3d 758, 762-65 (Alaska 2015).

and is most consistent with our prior discipline decisions. And regardless of the sanction, Ivy's obligation to pay attorney's fees should be reduced.